No. 00-853

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 197

IN RE THE PETITION OF

A. CAROLINE FENZAU,

   Petitioner and Respondent,

 and

WILLIAM FENZAU,

   Respondent and Appellant.

APPEAL FROM: District Court of the Eleventh Judicial District,
      In and for the County of Flathead,
      Honorable Ted O. Lympus, Judge Presiding

COUNSEL OF RECORD:

   For Appellant:

     Patrick D. Sherlock, Sherlock & Nardi, Kalispell, Montana

   For Respondents:

     George W. Best, Attorney at Law, Kalispell, Montana

           Submitted on Briefs: August 30, 2001

              Decided: September 5, 2002

Filed:

      _____
            Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1   A. Caroline Fenzau, Petitioner and Respondent (Caroline), filed a petition for dissolution of marriage against William A. Fenzau, Respondent and Appellant (William), on May 27, 1998. William appeals the decree of dissolution entered by the District Court of the Eleventh Judicial District, Flathead County. We affirm in part and remand for further proceedings consistent with this opinion.

¶2   William raises the following issues on appeal:

¶3   1.   Whether the District Court erred by allowing and considering evidence of physical and emotional abuse of Caroline by William.

¶4   2.  Whether the District Court failed to equitably apportion the marital estate.

¶5   3.   Whether the District Court erred by not exercising independent judgment when it adopted Caroline's proposed findings of fact and did not establish the marital estate's net worth.

¶6   4.   Whether the District Court properly considered the issue of attorney fees.

### FACTUAL AND PROCEDURAL BACKGROUND

¶7   Caroline and William were married on March 12, 1993, in Reno, Nevada.  No children were born of the marriage.

¶8   William was 60 years of age at the time of the dissolution, in good health, and retired from Turner Construction Company, where he had been a project manager for approximately thirteen years.  At the time of the dissolution, William was incarcerated in federal

2

prison on a weapons charge arising out of his earlier conviction of felony domestic violence upon Caroline. Caroline was 53 years old, in poor health, disabled, and receiving Social Security benefits of approximately $770 per month due to a parasitic problem in her stomach and a resulting clotting deficiency, conditions which predate her marriage to William. Although Caroline was receiving disability payments at the time of marriage, the present state of her disability is a direct result of physical abuse she sustained during the marriage with William.

¶9 Caroline entered the marriage with approximately $24,500 in cash; antiques worth $25,000; a doll collection worth $15,000; a vehicle valued at $17,000; $10,000 in equipment; and $5,000 from her mother's estate. William entered the marriage with $100,000 in cash, which was an inheritance from his mother; an Employee Stock Ownership Plan (ESOP) in the amount of approximately $11,321; a 401(K) plan valued at $51,000; a $588 per month pension once he turns age 65; and a coin collection valued at approximately $500.

¶10 In 1995, William and Caroline purchased a bed and breakfast business in Emigrant, Montana. In order to purchase the bed and breakfast, William liquidated his 401(K) and Caroline contributed most of her premarital assets. In 1997, the parties sold the bed and breakfast, and purchased a house for approximately $222,000 in Somers, Montana. They then divided their excess funds into two separate investment accounts, each placing $88,000 into separate Linsco/Private Ledger (LPL) stock accounts. At the time of dissolution, which followed losses in the stock market, William's

3

account was valued at $6,683 and Caroline's account was valued at $1,285.

¶11 The District Court found that Caroline "sustained over seven years of abuse during the course of her relationship" with William. On one occasion, William cut Caroline's wrist while trying to cut the phone line when she was dialing 911. Caroline also suffered facial bruises, a concussion, and broken teeth. In another incident, William knocked Caroline to the floor and stomped on her lower back, crushing a disc in her back. She was transported to a hospital by ambulance, and hospitalized for seven days. In 1994, William pushed Caroline down an outside stairway, injuring her right knee, which required orthoscopic surgery. After the couple moved to Somers in May 1997, William attacked Caroline one night after she refused to have sex with him. He tied her hands and feet with a telephone cord, bent her over a desk, and raped her. William then locked Caroline in a closet, keeping her there for eighteen hours.

¶12 Caroline's testimony recounted additional incidents of abuse during the marriage, including over a half dozen concussions, the loss of most of her teeth, being kicked in the stomach, being sexually assaulted, and having a gun put to her head and threatened with her life. During their marriage, William was incarcerated for assault on numerous occasions.

¶13 William denied causing these injuries. William asserted that the injuries Caroline claims were either due to her disability or caused by accidents or other natural causes. He argues that none

4

of the medical records indicate he caused any of these injuries to her. However, William does not deny being arrested for domestic abuse nor his criminal record arising from charges related to his abuse of Caroline.

¶14 Caroline has ongoing medical expenses as a result of her injuries. She takes several prescription medications for her physical pain and emotional injuries. The current cost of her prescriptions is about $150 to $190 per month. Caroline faces at least $10,000 in future dental bills to repair the teeth that were broken or knocked out. She also faces probable surgery on her back due to damaged discs. Caroline will require physical therapy throughout the course of her life at a cost of approximately $85 per week. Additionally, Caroline faces an estimated $33,000 in future counseling costs to address the mental and emotional consequences of William's actions.

¶15 Prior to the dissolution proceedings, William retained attorney Patrick D. Sherlock (Sherlock) to represent him on criminal charges of Partner Assault and Sexual Intercourse Without Consent (6 counts), arising out of his attacks upon Caroline, as well as other criminal charges. Initially, Sherlock consulted with District Court Judge Ted O. Lympus regarding William's eligibility for appointment of a public defender. Judge Lympus determined William was not entitled to a public defender, given the value of his assets. William then assigned one-half of his undivided half interest in the parties' home to Sherlock as security for the fees. Although Sherlock petitioned the District Court to approve his

5

assignment and his fee, the Final Decree of Dissolution failed to address Sherlock's motion, simply holding that each party should pay their own attorney fees.

¶16 In distributing the assets in the Final Decree of Dissolution, the District Court awarded Caroline the following assets: the marital residence located in Somers, Montana; a 1992 Chevrolet pickup; an inoperable 1980 Datsun automobile; a 1995 sixteen-foot trailer; recreational equipment; and miscellaneous household furnishings, heirlooms, art, jewelry, silver, crystal, and china. Additionally, Caroline was awarded William's Turner Corporation ESOP. The assets awarded to Caroline were valued at $263,571. Caroline was assigned the debts incurred by her subsequent to the parties' separation, as well as all debt related to her medical expenses.

¶17 The District Court awarded William his Turner Corporation pension plan and personal effects, subject to any debt he had incurred subsequent to the parties' separation.

### STANDARD OF REVIEW

¶18 In a dissolution proceeding, this Court reviews a district court's findings of fact to determine whether the district court clearly erred. The clearly erroneous standard involves a three-part test: (1) this Court will review the record to see if the findings are supported by substantial evidence; (2) if the findings are supported by substantial evidence, this Court determines if the trial court has misapprehended the effect of the evidence; and (3) if substantial evidence exists and the effect of the evidence has

6

not been misapprehended, this Court may still find that a finding is clearly erroneous when, although there is evidence to support it, a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed. *Pfeifer v. Pfeifer* (1997), 282 Mont. 461, 467, 938 P.2d 684, 688. We review a trial court's conclusions of law to determine whether those conclusions are correct. *In re Marriage of Harper*, 1999 MT 321, ¶ 17, 297 Mont. 290, ¶ 17, 994 P.2d 1, ¶ 17.

**DISCUSSION**

¶19 **Did the District Court err by allowing testimony and evidence in relation to the physical and emotional abuse of Caroline by William?**

¶20 William moved to strike allegations of his abuse of Caroline from her pleadings and to exclude evidence of such abuse in the dissolution proceeding. The District Court denied William's motions. On appeal, William asserts the District Court erred in admitting and considering evidence of the abuse, citing the prohibition against consideration of marital misconduct set forth in § 40-4-202, MCA, and this Court's affirmation of that principle in our decisions.

¶21 The District Court made extensive findings about the physical and emotional abuse inflicted upon Caroline by William, including the facts referenced earlier in this opinion, as well as numerous other instances. Although not raised as an issue on appeal, William's briefing also offers the contention that the findings of abuse are not supported by the evidence. However, the District

7

Court's findings were clearly supported by substantial evidence. The Court found that "the present state of [Caroline's] disability is a direct result of her marriage to [William]." The District Court also noted the following findings about Caroline among the reasons it gave for the distribution of the marital estate:

> She is left with a damaged and disabled body solely as a result of Respondent's abuse;
>
> She faces certain future physical, emotional and mental pain with a lifetime of medical needs, again solely as a result of such abuse inflicted upon her by Respondent.

¶22 The District Court forthrightly concluded that its distribution of property was "[b]ased upon the evidence clearly showing the extent of the abuse, both physical and emotional, inflicted upon Petitioner by Respondent, [and] Petitioner's resultant and continuing need for medical treatment."

¶23 Section 40-4-202, MCA, provides that the trial court shall equitably apportion marital property between the parties "without regard to marital misconduct." We have thus held that "[a]pportionment of a marital estate is based on equitable principles and whether parties are at 'fault' should not affect the court's division of assets." *In re Marriage of Griffith* (1993), 260 Mont. 124, 141, 860 P.2d 78, 89.

¶24 In *Collette v. Collette* (1981), 190 Mont. 500, 621 P.2d 1093, the District Court required the husband to make all future payments on the family home in "partial recompense" for his failure to provide the wife with an accounting of her share of proceeds from a sale of property. This Court reversed, finding that the District Court's actions were "akin to an assessment of punitive damages,"

8

and a violation of § 40-4-202, MCA, which "expressly provides that the court is not to consider any marital misconduct in disposing of the marital assets." 190 Mont. at 504, 621 P.2d at 1095. The Court reached a similar result in *In Re Marriage of Griffith*, supra.

¶25 In *In re Marriage of Bultman* (1987), 228 Mont. 136, 740 P.2d 1145, the wife asserted that the District Court impermissibly relied upon marital misconduct in its division of the marital estate. The wife cited the District Court's reference to her placement of the husband in the State Hospital at Galen, that the husband had not been permitted to return to the family home, and he had no access to the parties' assets. However, in analyzing the division of the estate, this Court found that the District Court had made those findings to explain its decision to order the sale of the family home and to equally divide the proceeds between the parties, not to punish the wife. *Bultman*, 228 Mont. at 138, 740 P.2d at 1147. Similarly, we have held that the District Court's reference to a substantial loss in restaurant sales under a spouse's management did not interject fault into the dissolution, but simply aided the court in considering and equitably distributing the marital estate. *In the Marriage of Hanni*, 2000 MT 59, 299 Mont. 20, 997 P.2d 760.

¶26 In this case, the District Court considered Caroline's medical and financial needs resulting from William's abuse during the marriage when apportioning the marital estate. William argues this violates § 40-4-202, MCA, which prohibits the consideration of

marital misconduct in dividing the marital estate. However, a distinction exists between awarding a larger portion of the marital estate in order to penalize marital misconduct, and, on the other hand, considering the medical and financial consequences of marital abuse in the allocation of the marital estate. Although this Court has not had occasion to address this distinction previously, other states with similar statutory prohibitions on the consideration of marital misconduct have done so.

¶27    In *Burt v. Burt* (Minn. 1986), 386 N.W.2d 797, the trial court had found that the wife's earning capacity had been impaired as the result of physical abuse inflicted by the husband during the marriage, and awarded her maintenance therefor. *Burt*, 386 N.W.2d at 799. The Minnesota Supreme Court affirmed, determining that "[t]he statutory prohibition against considering marital misconduct does not foreclose a judge from considering the financial needs resulting from a chronic health problem that in turn was caused by physical abuse during the marriage." 386 N.W.2d at 800.

¶28    In *In re Marriage of Severino* (Ill. 1998), 698 N.E.2d 193, the court considered the emotional state of the petitioner resulting from physical abuse during the marriage in awarding maintenance to the petitioner. "Noting that this . . . 'fragile' condition of petitioner was apparently caused by the abuse from respondent does not mean that the trial court considered the conduct of respondent in an effort to punish him." *Severino*, 698 N.E.2d at 195. Likewise, in *Wheeler v. Upton-Wheeler* (Nev. 1997), 946 P.2d 200, the Nevada Supreme Court determined that the economic consequences

10

of spousal abuse can be considered in the division of property and assets. "If spousal abuse . . . of one party has had an adverse economic impact on the other party, it may be considered by the district court in determining . . . [the] division of . . . property." *Wheeler*, 946 P.2d at 203.

¶29 The Court finds these holdings to be well founded. Likewise, this Court holds that the statutory prohibition against considering marital misconduct does not foreclose the district court from considering the medical and financial needs of a spouse which result from the other spouse's physical, mental, or emotional abuse during the marriage. Consideration of the economic effects of abuse, such as medical expenses and a person's ability to work and earn an income, is not an interjection of fault or an assignment of blame which is contemplated by the statutory prohibition of judicial consideration of marital misconduct. If the economic impact of abuse is excluded from consideration in making a division of the marital estate, a truly equitable apportionment cannot result.

¶30 We hold that the admission and consideration of evidence of the consequences of marital abuse, and the findings made by the District Court herein, were proper and aided the District Court in fashioning an equitable distribution of the marital estate. These findings did not interject fault or marital misconduct into the dissolution, but allowed the District Court to give consideration to the very real effects of William's abuse of Caroline, and make

11

provision for her ongoing needs.  The District Court did not err in so doing.

**¶31  Did the District Court fail to equitably apportion the marital estate?**

¶32  Section 40-4-202, MCA, governs the distribution of property in a marriage dissolution, and lists the factors the district court must consider in making an equitable distribution.  The statute provides in part:

> In a proceeding for dissolution of a marriage . . . the court, without regard to marital misconduct, shall . . . finally equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether the title thereto is in the name of husband or wife or both.  In making the apportionment, the court shall consider the duration of the marriage and prior marriage of either party; the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and need of each of the parties; custodial provisions; whether the apportionment is in lieu of or in addition to maintenance; and the opportunity of each for future acquisition of capital assets and income.

Section 40-4-202, MCA.

¶33  William argues the District Court did not divide the marital estate equitably, because Caroline received substantially more of the marital estate than he received.  Further, William argues that the District Court failed to consider his contributions to the marital estate.

¶34  In dividing the assets, the District Court determined that the majority of both parties' premarital assets were invested into the marital estate.  Additionally, the District Court found that William was in good health, would be employable following his release from prison, and had the ability to earn income and acquire

12

assets. On the other hand, the District Court found that Caroline was in poor health, disabled, physically unable to acquire gainful employment, and did not have the ability to earn adequate income or assets to provide for her needs. In addition to not being able to earn income, the District Court found that Caroline has inevitable expenses arising from William's abuse. As set forth above, the District Court extensively documented Caroline's medical needs and expenses.

¶35 The District Court awarded Caroline marital assets in lieu of maintenance, in accordance with §§ 40-4-202 and 40-4-203, MCA. The District Court reasoned that "in lieu of spousal maintenance to which she is clearly entitled, . . . but payment of which by [William] cannot be relied upon, . . . it is fair and equitable to distribute the bulk of the tangible marital assets to [Caroline]." Given the fact that William was incarcerated at the time of the dissolution hearing and not working, his ability to make regular maintenance payments was recognizably difficult. Thus, the District Court made the reasonable choice of awarding Caroline a larger portion of the marital estate, rather than providing her with maintenance.

¶36 The District Court's findings in this case reflect that Judge Lympus considered, among other things, the duration of the marriage; the parties' assets; their health, occupation, amount and sources of income; the needs of each of the parties; the opportunity of each for future acquisition of capital assets and income; and apportionment of property to Caroline in lieu of

13

maintenance, all of which are consistent with § 40-4-202, MCA. Accordingly, we hold that the District Court did not err in apportioning the marital estate.

¶37 **Did the District Court err by not exercising independent judgment when it did not establish the marital estate's net worth and adopted Caroline's proposed findings of fact?**

¶38 First, William argues the District Court failed to exercise independent judgment when it failed to establish the marital estate's net worth. In support of his argument, William cites *In re the Marriage of Gochanour*, 2000 MT 156, 300 Mont. 155, 4 P.3d 643, and *In re the Marriage of Smith* (1994), 264 Mont. 306, 871 P.2d 884. In those cases, we held that without a finding of the marital estate's net worth, this Court cannot determine if the property was equitably divided. *Gochanour*, ¶ 42; *Smith,* 264 Mont. at 310-11, 871 P.2d at 887.

¶39 In *In re Marriage of Harkin,* 2000 MT 105, ¶ 31, 299 Mont. 298, ¶ 31, 999 P.2d 969, ¶ 31, we concluded that the District Court did not abuse its discretion by not making a specific finding of fact regarding the total assets and liabilities of the marital estate, holding "a net valuation by the district court . . . is not always mandatory." *Harkin*, ¶ 31 (quoting *In re Marriage of Walls* (1996), 278 Mont. 413, 417, 925 P.2d 483, 485). In determining whether a finding of net worth is necessary, we have stated that "the test is whether the findings as a whole are sufficient to determine the net worth and to decide whether the distribution was equitable." *Harkin*, ¶ 31; *Walls*, 278 Mont. at 417, 925 P.2d at 485; *In re*

14

*Marriage of Stephenson* (1989), 237 Mont. 157, 160, 772 P.2d 846, 848.

¶40   In this case, the District Court made findings of fact as to the value of Caroline's and William's significant assets and debts. Although the District Court did not make a specific finding of the estate's net worth, the findings of fact taken as a whole are sufficient to determine whether the property distribution was equitable. *Harkin*, ¶ 31; *Walls*, 278 Mont. at 417, 925 P.2d at 485; *Stephenson,* 237 Mont. at 160, 772 P.2d at 848. Accordingly, we hold the District Court did not err in failing to determine the net worth of the marital estate.

¶41   Second, William argues the District Court failed to exercise independent judgment by adopting most of Caroline's proposed findings of fact. William claims the District Court did not give individual treatment to the issues presented by the parties. We disagree.

¶42   We have held that "the District Court can adopt a party's proposed findings of fact and conclusions of law if they are sufficiently comprehensive and pertinent to the issues to provide a basis for a decision and are supported by the evidence." *In Re the Marriage of Ereth* (1998), 232 Mont. 492, 495, 757 P.2d 1312, 1314. Contrary to William's argument, the record indicates that the District Court did not simply "rubber-stamp" Caroline's findings of fact and adopt her findings as its own. The District Court properly considered the evidence, the credibility of the witnesses, and exercised independent judgment in issuing its findings and

15

conclusions. Accordingly, we hold the District Court did not err in making its findings of fact and conclusions of law.

¶43 **Did the District Court properly consider attorney fees?**

¶44 William argues that the District Court "side-stepped" the attorney fee issue by simply ordering each party to pay their own attorney fees and costs. He contends that attorney fees in this case for both his criminal defense and his representation in this dissolution proceeding are "necessities of life" under § 40-4-121, MCA, which are properly payable from the marital estate. William further asserts that the District Court judge verbally indicated that attorney fees would be awarded.

¶45 After being disqualified for appointment of a public defender, William retained Sherlock to represent him on the criminal charges. On November 5, 1998, William executed an assignment of one-half of his undivided half interest in the home jointly owned by him and Caroline to Sherlock as security for Sherlock's fees. However, because of the pending dissolution proceeding, a restraining order was in effect restricting the parties from encumbering or transferring any property, whether jointly or separately held, "without either the consent of the other party or an order of the court, except in the usual course of business or for the necessities of life." Section 40-4-121, MCA. After William and Caroline failed to reach an agreement on a method for securing William's legal representation, William moved for a lift of the stay, indicating in his motion that he had been charged with several felony counts and did not have funds to hire legal counsel.

16

The District Court, on September 30, 1999, lifted the restraining order "to the extent that [William] be allowed to encumber his undivided half interest" in the parties' home, which was owned jointly. The assignment of interest from William to Sherlock was thereafter recorded on October 4, 1999. Then, without explanation, on February 3, 2000, the District Court vacated its September 30, 1999, order which had lifted the restraining order, thus reinstating it. However, William's assignment of the one-half interest in the home to Sherlock remained of record. The District Court failed to address either the assignment or the fees incurred by William in defending himself against the criminal charges, holding only that each party should bear his or her own attorney fees related to the dissolution.

¶46 We affirm the District Court to the extent it addressed the fee issue. We find that the District Court's holding that each party would bear his or her own attorney fees related to the dissolution proceeding was a proper exercise of its discretion herein.

¶47 However, the validity and status of the assignment and the issue of the fees related to William's criminal representation were left unresolved. Therefore, we remand this matter for further proceedings to address these issues. The District Court is directed to determine the validity of William's assignment of his interest in the home, jointly owned by him and Caroline, to Sherlock as security for Sherlock's fees. Further, the District Court shall determine whether William's criminal defense fees are

17

properly payable from the marital estate.  Finally, if the District Court finds the criminal fees are payable from the marital estate, it shall determine the amount of fees which shall constitute a reasonable attorney fee for William's criminal representation.

¶48 Accordingly, we affirm in part and remand to the District Court for further proceedings consistent with this opinion.

/S/ JIM RICE

We concur:


/S/ JIM REGNIER
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART'
/S/ JAMES C. NELSON