682 S.E.2d 301

MARICHRIS, LLC, Respondent/Appellant,

v.

George Rodney DERRICK, Bank of America, Inc., Defendants,

Of whom George Rodney Derrick is the, Appellant/Respondent.

No. 4586.

Court of Appeals of South Carolina.

Heard Jan. 22, 2009.

Decided July 13, 2009.

Sean A. O'Connor, of Charleston, for Appellant–Respondent.

K. Michael Barfield and Dawes Cooke, both of Charleston, for Respondent–Appellant.

HUFF, J.:

In this cross-appeal from a partition action, both parties challenge the master-in-equity's award of attorneys' fees. In

addition, George Rodney Derrick (Rod) challenges the allocation of the sales proceeds.

## FACTS/PROCEDURAL HISTORY

This case is, in fact, a dispute between two brothers. The sole owner of MariChris, LLC, is Melissa Derrick, the wife of Thomas Derrick. Thomas is Rod's brother. Thomas serves as the President of MariChris and was responsible for all of MariChris's actions in this matter. In April of 2004, Thomas approached Rod about purchasing water-front property on Doar Road in Awendaw, South Carolina. On May 27, 2004, the parties entered into an agreement with Jerald S. Scheer a/k/a Gerald S. Scheer to purchase the property for $2,400,000.00. The parties initially discussed MariChris having a 37.5% interest in the property and Rod would have a 62.5% interest. Their financial contributions would be in proportion to their ownership interests with MariChris providing $900,000 obtained in a sale of property on Hall Road on Awendaw (Hall Road Property). Rod was to provide $1,500,000.00 from the sale of other properties. The parties also discussed each having a 50% interest with proportionate contributions. In addition, Thomas would be responsible for the work on the infrastructure to develop a subdivision on the Property.

Prior to closing on the Scheer contract, the parties decided to "flip" the property by selling it to Harry Wilhelm for $3,200,000.00. The parties agreed to divide the profits from the flip equally.

Thomas did not want to sell his Hall Road property if he was not going to be keeping waterfront lots on the Doar Road Property. Rod, therefore, obtained a loan from Bank of America for $1,560,000.00. Although Rod was the only party named on the note, Thomas, on behalf of MariChris, signed the mortgage on the Property that secured the note. In addition, at closing Rod contributed $696,000.00 from the sale of another property, $116,000.00 in personal funds, and $27,000.00 in earnest money. MariChris contributed $13,000.00 in earnest money.

The Sheer closing occurred on September 14, 2004. The deed lists the purchasers as MariChris and Rod. A hand-

written asterisk is by their names followed by a hand-written note "each a 50% interest."

After the parties closed on the Property, the closing with Wilhelm fell through. Over Rod's objection, Thomas moved into the house on the Property and attempted to make improvements to it as well as create a development plan. Thomas attempted to make two payments on the note, but Rod had the bank return the payments. The relationship between the parties quickly deteriorated.

MariChris brought this partition action asserting it owned a 50% interest in the Property. Rod requested the parties' interests be declared proportionate to their financial contributions with Rod therefore having a 99.5% interest. He also asserted counterclaims for bad faith, unclean hands, estoppel, constructive trust, and ouster.

The case was heard before the master-in-equity. The master held the parties' only agreement was to purchase the property for development or sale and to split the profits of any sale equally. He rejected Rod's contention that Rod should be the 99.5% owner of the Property based on the financial contributions. Instead, the master held the parties were legal and equal owners of the Property. In considering the contributions of the parties, the master held Thomas's work to improve the Property did not render the house or Property more valuable. The court held Rod was entitled to a return of his contributions in the amount of $972,543.26. This figure included a $120,000 credit for MariChris's one-half share of the interest paid on the Bank of America note. The court allowed MariChris a return of its $13,000 in earnest money. The master rejected all of Rod's equitable defenses due to Rod's own inequitable conduct. He also rejected Rod's claims for ouster and held any rent due for Thomas's use of the house on the Property was discharged by his efforts to make the house livable. The master held due to the parties' inequitable conduct, he could not provide for a partition in kind or in an allotment of the Property. The court noted that Cypress Swamp, LLC, had made a reasonable offer to purchase the Property and therefore ordered the sale of the Property to Cyprus Swamp at a minimum price of $4,815,000.00. In the event Cypress Swamp did not close by September 30, 2006,

the Property was to be sold at judicial sale. The master ordered the parties to bear the cost of the sale to Cyprus Swamp equally. The master ordered the parties to submit their attorneys' fees and costs for a later determination of whether these funds would be assessed against the Property. He subsequently denied Rod's motion to alter or amend the judgment and for a new trial.

The closing of the sale to Cyprus Swamp as provided in the master's order did not occur. Instead, on July 28, 2006, Rod submitted to the master a proposed contract to sell the Property to another buyer for $4,900,000.00 with no sales commission. No action was ever taken on this offer. The Property was sold at judicial sale to an agent for Rod for $4,000,000.00.[1] Rod filed a motion requesting the master issue an order determining the amount of the funds to be disbursed from the sale of the Property, stay the distribution of the disputed amount, and deposit the funds into the court. In its order, the master noted that the Bank of America mortgage had been satisfied. The court refused to allow Rod further credit for payments made on the Bank of America note subsequent to the trial and held Rod was solely responsible for the payment of taxes. The court found Rod should be responsible for the cost of the litigation and added to the amount of funds required for Rod to comply with his bid of $97,417.00 for Thomas's attorneys and $2050.00 for Rod's former attorney. The court did not make an allocation for the fees charged the attorney who represented Rod after the trial. Noting he was only requiring Rod to bring to court the amount to satisfy the lien on the Property, expenses incurred in bringing the property to sale, and the amount he needed to satisfy MariChris's 50% profit, the master calculated $855,738.91 as the amount Rod must pay to comply with his bid. The master denied Rod's motions to stay the disbursement of funds and to deposit the funds with the court.

Rod filed a motion pursuant to Rule 59(e), SCRCP, as well as an appeal with this court. On Rod's motion, this court ordered the funds paid to the Clerk of Court for Charleston

---

1. Rod petitioned the master for an appeal bond, which the master set for $300,000.00. However, Rod allowed the Property to proceed to sale.

County and deposited into an account pursuant to Rule 67, SCRCP. This court also remanded the case for a hearing on Rod's Rule 59(e) motion.

After hearing the motion, the master ruled that while his award of attorney's fees to MariChris was warranted under South Carolina Code Section 15–61–110 (2005), the award must come from the common fund pursuant to Rule 71(d)(3), SCRCP. Furthermore, the court adopted Rod's position that if the Court made an award of attorney's fees to one party, it must award all parties' attorneys' fees to be paid from the fund. Thus, the master ordered attorneys' fees in the amount of $175,300.87 to be paid out of the common fund. He refused to modify his previous determination of the credit owed Rod for the payments made on the Bank of America note. The master noted that it was Rod's own conduct that unnecessarily tied the parties to the Property and created the need for the partition action. He found under his equitable powers, Rod should have to bear the cost of "prolonging the strife associated with the property." The master denied MariChris's request to have Rod deposit the entire $4,000,000.00 bid price with the court. This appeal followed.

## STANDARD OF REVIEW

■ This is an action in equity. *Wilson v. McGuire,* 320 S.C. 137, 140, 463 S.E.2d 614, 616 (Ct.App.1995) (a partition action is equitable). Therefore, this court may find facts in accordance with its own view of the preponderance of the evidence. *Inlet Harbour v. S.C. Dep't of Parks, Recreation & Tourism,* 377 S.C. 86, 91, 659 S.E.2d 151, 154 (2008). However, we are not required to disregard the findings of the trial judge who saw and heard the witnesses and was in a better position to judge their credibility. *Sloan v. Greenville County,* 356 S.C. 531, 546, 590 S.E.2d 338, 346 (Ct.App.2003).

## LAW/ANALYSIS

### 1. Attorneys' fees

Both parties challenge the master's award of attorneys' fees. MariChris argues the master erred in ruling that the attorneys' fees must be equally borne by all parties and awarded to

counsel for all parties. It asserts Rod should be responsible for all of its fees. Rod argues that as neither party benefitted the property, neither party's attorneys' fees should come from the common fund.

■ The master originally ordered Rod to pay MariChris's attorneys' fees in the amount of $97,417.00 due to Rod's inequitable conduct. On Rod's motion to alter or amend, the master changed his ruling. While he noted that MariChris would be entitled to fees under South Carolina Code section 15–61–110 (2005) and that his view of the equities had not changed, he found persuasive Rod's argument that Rule 71(d)(3), SCRCP, must be reconciled with section 15–61–110 and thus attorneys' fees must be awarded out of the common fund. In addition, the master found if it made an award to one parties' attorney, it must make such an award to all attorneys. We find this ruling in error.

Section 15–61–110 of the South Carolina Code provides: "The court of common pleas may fix attorneys' fees in all partition proceedings and, as may be equitable, assess such fees against any or all of the parties in interest." Rule 71(d)(3) provides:

> Attorneys fees and costs may be awarded the attorney for any party(s) from any common fund generated by the partition to the extent that attorney's efforts benefited all parties; otherwise, his fee shall be paid by the party(s) he represents or from the party(s) share(s) only. The court may order the payment of costs from the proceeds of sale of the common property or may equitably assess the costs against shares of the parties.

■■ In interpreting a statute and a rule of civil procedure we follow the cardinal rule that legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in light of the intended purpose of the statute or rule. *McClanahan v. Richland County Council,* 350 S.C. 433, 438, 567 S.E.2d 240, 242 (2002); *see Maxwell v. Genez,* 356 S.C. 617, 620, 591 S.E.2d 26, 27 (2003) (stating that in interpreting the meaning of the South Carolina Rules of Civil Procedure, the court applies the same rules of construction used to interpret statutes). "The language must also be read in a sense which harmonizes with its

subject matter and accords with its general purpose." *Hitachi Data Sys. Corp. v. Leatherman,* 309 S.C. 174, 178, 420 S.E.2d 843, 846 (1992).

 We find no conflict between the statute and rule. Both allow for the award of attorneys' fees from the common fund. In addition, section 15–61–110 clearly allows the court to equitably assess attorneys' fees against any or all of the parties in interests. A rule of civil procedure may not limit the provisions of a statute. *See* S.C. Const., art. V, § 4 (2009) ("*Subject to the statutory law,* the Supreme Court shall make rules governing the practice and procedure in all such courts.") (emphasis added). Thus, the master erred in holding the award of fees must be paid from the common fund. In addition we find no requirement in either the rule or the statute that an award of attorneys' fees to one party mandates an award to all attorneys. Accordingly, we remand the issue of attorneys' fees to the master.

2. Ownership interest

 Rod argues the master erred in holding the parties each owned a 50% interest in the Property. We disagree.

> Where two or more persons take as tenants in common under an instrument silent as to their respective shares, there is a presumption that their shares are equal. Ordinarily, this presumption is not conclusive but is subject to rebuttal, and has at times been rebutted by parol evidence. A party challenging the presumption that property held in joint tenancy is equally owned has the burden of proof.

20 Am.Jur.2d *Cotenancy and Joint Ownership* § 117 (2005). This presumption may be rebutted where there is evidence of unequal contributions to the purchase price of the property. *Id.*

There is no dispute that at the time of execution of the deed, the parties intended to equally own the property and share the profits. Rod acknowledges in his brief that the deed reflects both parties as equal owners of the property and concedes the deed accurately reflects the intentions of the parties at the time they purchased the property. Thomas explained that at the closing, the paralegal asked what the ownership interest

would be. The notation was handwritten on the deed after Rod replied that it would be 50% each.

In an email sent to MariChris after the Wilhelm flip fell through, Rod acknowledged that they had closed on the Property as 50/50 partners. He requested MariChris deed him a 12.5% interest in the property to bring his interest up to 62.5%. Thomas testified that after the flip fell through, the parties never agreed on the ownership interests. Although there may have been continuing discussions, there was never an agreement between the parties that changed their respective ownership interests. There certainly was never an agreement that MariChris would only have a .5% interest in the property.

Furthermore, MariChris did attempt to make additional financial contributions by making the first two payments on the Bank of America loan. These payments were subsequently returned to MariChris and on Rod's orders, a bank officer informed MariChris that it was not to make further payments on the note. In addition, Thomas testified that by the time he sold the Hall Road property, the parties were already involved in litigation and he could not roll the proceeds of that sale into the Property.

Accordingly, we find the master did not err in holding the parties each owned a 50% interest in the Property.

3. Reimbursement for payments on Bank of America note.

Rod argues the master erred by not allowing proper credit to him for the interest payments he made on the Bank of America loan. We agree.

For the purposes of this argument, Rod does not contest the master's ruling that he prevented MariChris from making payments on the interest-only note. He asserts the master should have granted him credit for half of all payments made for a total of $300,000.00.

We find no error in the master's refusal to allow Rod credit for payments made after the trial. The master denied Rod credit for these payments due to his conduct. The master noted that while Rod contended the property was worth more than the court-approved contract for

$4,815,000.00, the master believed this amount was greater than what a court-ordered sale would bring, and, in fact, the judicial sale price was only $4,000,000.00. The master found Rod was responsible for none of the offers to purchase the property ever being consummated. Thus, the master "determined that it [was] only appropriate that [Rod] should have to bear the cost of prolonging the strife associated with the subject property."

However, we find the master did err in his distribution calculations. In the original order, the master found Rod was entitled to a return of his contributions, including $120,000 for payments made to Bank of America on MariChris's behalf. To achieve the master's ruling that each party should be responsible for 50% of the payments, the master should have deducted $120,000 from MariChris's share of the profits or deducted the entire amount of the payments made before trial from the common fund. While we find no error in the master's refusal to allow credit for further payments made after trial, we hold the master did err in essentially making Rod responsible for 75% of the payments made before trial. Accordingly, we order $240,000 be deducted from the common fund to make MariChris responsible for 50% of the payments.

Rod also argues the master erred in respect to the sum to be credited to Rod with regard to the pay-off of the Bank of America note. The master used the figure of $1,560,000.00. Rod contends the actual pay-off was $1,570,764.90. First, we find there is no evidence of this payoff figure in the record on appeal other than a statement by Rod's attorney. *See* Rule 210(h), SCACR ("[T]he appellate court will not consider any fact which does not appear in the Record on Appeal."). Furthermore, the amount of the note is stated in the pleadings as well as through-out the record as $1,560,000.00. As we found above, the master did not err in refusing to allow Rod credit for interest payments made after the trial. This ruling would include the payment of accrued interest in final pay-off. Accordingly, we find no error in the master's statement of the pay-off amount.

## CONCLUSION

We **AFFIRM** the master's determination that the parties each owned a 50% interest in the property, **MODIFY** the

judgment amount to allow for $240,000 to be deducted from the common fund for the pre-trial payments made to Bank of America, **AFFIRM** the master's ruling that Rod is not entitled to further reimbursement, **AFFIRM** the amount the master credited Rod for the final pay-off of the note and **REMAND** the issue of attorneys' fees to the master.

**AFFIRMED IN PART; AFFIRMED AS MODIFIED IN PART; REMANDED IN PART.**

THOMAS and LOCKEMY, JJ. concur.