**WINSTON DEMMING, Appellant/Plaintiff**
**v.**
**SYLVIA DEMMING, Appellee/Defendant**

S. Ct. Civil No. 2015-0052
Supreme Court of the Virgin Islands
April 4, 2017

LEONARD B. FRANCIS, JR., ESQ., Law Offices of Leonard B. Francis, Jr., St. Thomas, USVI, *Attorney for Appellant.*

CLIVE C. RIVERS, ESQ., Law Offices of Clive Rivers, St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and HODGE, *Designated Justice.*[1]

## OPINION OF THE COURT

(April 4, 2017)

CABRET, *Associate Justice.* Winston Demming appeals the Superior Court's May 8, 2015 divorce decree, which awarded the marital homestead to his former wife, Sylvia Son Demming ("Son"). Because the Superior Court erred in calculating Demming's net contribution toward the marital homestead, and failed to explain its calculation of Demming's premarital interest in the homestead and its consideration of Demming's marital fault, we vacate in part and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1980, Demming and Son began residing together, along with Son's children, at Son's home in Estate Tutu. Nearly two decades later, in 1999, the couple separated. Son remained at her home in Estate Tutu, but Demming moved into town to live with a roommate.

In 2000, Son purchased two properties with her own resources, No. 7 Estate Bolongo for $160,000 and No. 25-C Estate Bolongo for $80,000. Later that year, Demming, with Son's permission, moved into the furnished home located at No. 7 Estate Bolongo. In 2002, Son offered to sell Demming a 50 percent interest in No. 7 Estate Bolongo for $80,000. Although Demming made two payments amounting to $35,000, he did not pay Son the full $80,000. Nonetheless, on February 22, 2002, Son conveyed No. 7 Estate Bolongo to Demming and herself as tenants in common by a deed of gift.

In 2007, Demming and Son reunited and married in St. Thomas, and began living with one another in No. 7 Estate Bolongo. Shortly after the wedding, however, Demming took Son's wedding ring and did not return it. The couple continued to reside together and, in February 2009, Son conveyed her remaining interest in No. 7 Estate Bolongo to Demming by a deed of gift.

---

[1] Associate Justice Ive Arlington Swan is recused from this matter. The Honorable Verne A. Hodge, a retired Presiding Judge of the Superior Court of the Virgin Islands, sits in his place by designation pursuant to title 4, section 24(a) of the Virgin Islands Code.

In August 2010, Demming and Son separated again. Son left the home and stayed with a relative for a short time. When she returned, she discovered that Demming had changed the locks to the top floor. Refused entry by Demming, Son moved into a small efficiency apartment located on the ground floor of the home.

In February 2012, after the parties had lived apart for nearly two years, Demming filed an action for divorce in Superior Court, in which he identified No. 7 and No. 25-C Estate Bolongo as marital properties. Son, in her answer, disputed whether either No. 7 or No. 25-C Estate Bolongo constituted marital property. Nonetheless, in her counterclaim, Son admitted that she and Demming were the "rightful owners" of No. 7 Estate Bolongo, which she described as the "marital abode" subject to "just adjudication" by the court, and of which she sought a 90 percent interest because of Demming's alleged infidelity and deceit. The Superior Court held a hearing on November 13, 2014, and heard testimony from Son, Demming, and Leston Stoutt.

During Son's testimony, she reasserted her request for a 90 percent interest in No. 7 Estate Bolongo, but also asked for the return of her missing wedding ring, which she said Demming had taken shortly after their wedding in 2007. She further testified that Demming made a number of monetary contributions to her during the course of their relationship, including: a 2002 payment of $35,000 made in exchange for an ownership interest in No. 7 Estate Bolongo; yearly payments of approximately $5,000 between 2002 and 2014 for the property taxes and homeowner's insurance for No. 7 Estate Bolongo; a $5,000 payment to repair the sewer system for No. 7 Estate Bolongo; regular support payments during their marriage amounting to $150 each week; and a series of post-separation payments amounting to approximately $4,000. When asked why she conveyed No. 7 Estate Bolongo by a deed of gift to herself and Demming as tenants in common in 2002, she explained that although Demming had only paid her $35,000 — not $80,000 — she had done so because she "love[d] him." She also explained that she later conveyed her remaining interest in the home by a deed of gift to Demming because he agreed to help her make payments toward the mortgage on No. 25-C Estate Bolongo. Despite that agreement, she claimed that Demming initially refused to provide her with any money, and instead told her to borrow the money from her children because they would inherit No. 25-C Estate Bolongo. She did admit, however, that Demming's post-separation

payments amounting to $4,000 were intended to help with her mortgage on No. 25-C Estate Bolongo.

When Demming testified, he renounced any claim to No. 25-C Estate Bolongo, but requested a 100 percent interest in No. 7 Estate Bolongo, explaining that it had been conveyed to him by a deed of gift because of his various contributions over the course of his decades-long relationship with Son. In describing his various contributions, Demming largely agreed with Son except that he claimed his payment of property taxes and homeowner's insurance amounted to approximately $6,500 each year, that his post-separation payments amounted to $6,000, and that he had paid an additional $5,000 to refurbish the cistern at No. 25-C Estate Bolongo. When asked about Son's missing wedding ring, Demming admitted he took it, but claimed that he had lost it.

Leston Stoutt, Son's adult child, also testified. He confirmed that once the parties separated, Demming remained on the top floor of No. 7 Estate Bolongo, whereas Son lived in the efficiency apartment below. He further testified that because of his mother's long-term financial difficulties, he regularly assisted her with her monthly expenses, explaining that he had "exhausted [his] means in trying to help her financially." In a May 8, 2015 divorce decree, the Superior Court dissolved the marriage and awarded Son ownership and possession of No. 7 Estate Bolongo and the household furniture. Demming filed a timely notice of appeal on June 2, 2015.

## II. JURISDICTION

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." V.I. CODE ANN. tit. 4, § 32(a). The Superior Court's May 8, 2015 divorce decree is a final judgment within the meaning of section 32, and therefore we have jurisdiction over this appeal. *Garcia v. Garcia*, 59 V.I. 758, 766 (V.I. 2013) (citing *Bradford v. Cramer*, 54 V.I. 669, 671 (V.I. 2011)).

## III. DISCUSSION

■ On appeal, Demming argues that the Superior Court erred by miscalculating his net contribution and awarding Son the entire marital homestead, and by improperly considering marital fault.[2] We review the

---

[2] Because Demming does not challenge the Superior Court's award of the household fur

506

Superior Court's legal determinations *de novo* and its findings of facts for clear error. *Rodriguez v. Rodriguez-Ramos*, 64 V.I. 447, 451-52 (V.I. 2016) (citing *Martin v. Martin*, 58 V.I. 620, 624-25 (V.I. 2013)). To the extent that the Superior Court's decision is not based on legal conclusions or factual findings, we review its distribution of marital assets for an abuse of discretion. *Garcia*, 59 V.I. at 767 (citing *Harvey v. Christopher*, 55 V.I. 565, 572 (V.I. 2011)). Moreover, we exercise plenary review over questions relating to the Superior Court's subject matter jurisdiction. *Drayton v. Drayton*, 65 V.I. 325, 332 (V.I. 2016) (citing *Judi's of St. Croix Car Rental v. Weston*, 49 V.I. 396, 399 (V.I. 2008)).

 In the Virgin Islands, the Family Division of the Superior Court has jurisdiction to equitably distribute a "marital homestead" during a divorce action. *Rodriguez*, 64 V.I. at 452; *see* 33 V.I.C. § 2305(d) ("[I]n the case of a divorce, the court which grants it shall make disposition of the homestead in accordance with the equity of the case.").[3] While not explicitly defined in the Virgin Islands Code, we have previously defined a "marital homestead" as " 'any "homestead"[4] in which a husband and wife both reside during the marriage and that is owned by one or both of

---

niture to Son, that issue is waived. *See* V.I.S.CT.R. 22(m) ("Issues that were . . . not briefed, or . . . are . . . unsupported by argument and citation to legal authority, are deemed waived for purposes of appeal").

[3] We note that although title 16, section 109(a)(7) of the Virgin Islands Code retroactively confers jurisdiction upon the Superior Court to equitably distribute "all marital property" in this case, *see Drayton*, 65 V.I. at 335 (explaining that title 16, section 109(a)(7) applies to "marital property distributions made on or after . . . December 19, 2014"), it does not apply to the marital home at No. 7 Estate Bolongo because Demming and Son acquired their initial interests as tenants in common in that property *prior* to marriage. *See id.* at 336 n.1 (explaining that property owned prior to marriage is "ordinarily . . . classified as separate property not subject to distribution" under title 16, section 109); *cf. Fell v. Fell*, 2015 Ark. App. 590, 473 S.W.3d 578, 580 (2015) (explaining that under a statutory definition of "marital property" similar to that in title 16, section 109(a)(7), a home acquired prior to marriage was nonmarital property). And to the extent that Son later transferred her remaining interest in the home to Demming, she did so pursuant to a deed of gift, which is an exception to the definition of marital property. 16 V.I.C. § 109(a)(7) (" '[M]arital property' means all real . . . property acquired by either spouse subsequent to marriage, except . . . [p]roperty acquired by gift, bequest, devise, or descent[.]"). Therefore, title 16, section 109(a)(7) did not confer jurisdiction upon the Superior Court to distribute the marital home located at No. 7 Estate Bolongo. *See Drayton*, 65 V.I. at 336 n.1.

[4] Title 33, section 2305(a) defines "homestead" as "the abode including land and buildings, owned by, and actually occupied by, the property owner, or by members occupied by, a person, or by members of the property owner's family free of rental charges."

507

the spouses.' " *Drayton*, 65 V.I. at 336 (quoting *Harvey*, 55 V.I. at 573); *accord Rodriguez*, 64 V.I. at 452; *Garcia*, 59 V.I. at 767; *Bradford*, 54 V.I. at 677. Since Demming and Son owned and resided at No. 7 Estate Bolongo during their marriage, it qualifies as a "marital homestead" and is subject to distribution "in accordance with the equity of the case" by the Superior Court under title 33, section 2305(d).[5]

Title 33, section 2305(d), however, does not define "equity of the case." In the absence of any statutory guidance, courts within the Virgin Islands have relied upon a number of different equity factors, such as

> the duration of the marriage, and prior marriage of either party, antenuptial agreement of the parties, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties, custodial provisions, whether the apportionment is in lieu of or in addition to maintenance, . . . the opportunity of each for future acquisition of capital assets and income. . . [,] the contribution or dissipation of each party in the acquisition, preservation, depreciation, or appreciation in value of the . . . estate[ ], and the contribution of a spouse as a homemaker or to the family unit.

*Allen v. Allen*, 118 F. Supp. 2d 653, 658 (D.V.I. App. Div. 2000) (quoting UNIF. MARRIAGE & DIVORCE ACT § 307, 9A U.L.A. 45 (1998)); *accord Armstrong v. Armstrong*, 266 F. Supp. 2d 385, 395 (D.V.I. App. Div. 2003). This Court has acknowledged the appropriateness of a number of equity factors. *See Drayton*, 65 V.I. at 340 (explaining that this Court has endorsed "consideration of multiple factors when equitably distributing a marital homestead during a divorce proceeding"). In *Martin*, for example, we af-

---

[5] Demming appears to argue for the first time on appeal that Son abandoned the marital homestead located at No. 7 Estate Bolongo. Notwithstanding his waived argument, *see* V.I.S.CT.R. 4(h) ("Only issues and arguments fairly presented to the Superior Court may be presented for review on appeal[.]"), there is no "clear and competent evidence" to establish that Son "voluntarily and intentionally relinquished or disclaimed her property rights" in the marital homestead. *Drayton*, 65 V.I. at 338 (citing *Garcia*, 59 V.I. at 769); *see Williams v. Williams*, 72 N.C. App. 184, 323 S.E.2d 463, 466 (1984) ("To constitute an abandonment or renunciation of [her interest] there must be acts and conduct positive, unequivocal, and inconsistent with [her] claim of title." (citation and internal quotation marks omitted)). Instead, as reflected in the undisputed trial testimony, Son continued to reside at the home located at No. 7 Estate Bolongo after the parties separated.

firmed an equitable distribution where the Superior Court made a number of relevant findings, including first, that the parties jointly owned the home and second, that one spouse renovated and repaired the home, and paid property taxes and homeowner's insurance for the home. 58 V.I. at 626-27. More recently, in *Drayton*, we affirmed an equitable distribution where the Superior Court considered the duration of the parties' marriage and the parties' contributions toward the home, including one spouse's contribution as a homemaker. 65 V.I. at 341-342.

In this case, the Superior Court considered four factors: the duration of the marriage; the extent to which the parties brought income and property to the marriage; the circumstances under which the property was acquired; and the age and health of the parties. Demming does not challenge the applicability of any of these factors on appeal.[6] *See* V.I.S.CT.R. 22(m). Instead, he argues that the court miscalculated his net contribution and improperly considered his marital fault. We address each argument in turn.

## A. The Superior Court's Calculation of Demming's Net Contribution

■ Demming argues that the Superior Court erred in calculating his net contribution toward the marital homestead, explaining that the court did not credit his property tax, homeowner's insurance, and support payments, or his premarital interest in No. 7 Estate Bolongo. We agree.

■■ In its calculation, the Superior Court determined that Demming had contributed $46,000 toward the marital homestead, including "$35,000 that he gave to [Son], plus $5,000 for maintenance to the home, plus $6,000 in additional payments to [Son]." The court also determined that Demming had derived $48,000 in benefit from the marital homestead,

---

[6] We note that even had Demming raised such a challenge, it cannot be said that the court erred in considering any of those factors, particularly where this Court has explicitly acknowledged the appropriateness of the first three factors, and the fourth factor — "age and health of the parties" — clearly relates to each party's ability to generate future income. *See Drayton*, 65 V.I. at 340 (considering duration of the marriage and the parties' contribution to the homestead); *Martin*, 58 V.I. at 626-27 (considering the parties' ownership of the homestead and the parties' contribution to the homestead); *Armstrong*, 266 F.Supp.2d at 395 (explaining that "[c]onsideration of each party's contribution to the acquisition of the property necessarily requires the court to delve beyond the form of ownership and title and inquire into the specific facts and circumstances of the parties' marriage and the circumstances under which the property was acquired").

509

inferring that his occupation of the top floor was "value[d] [at] . . . no less than $1,000 per month," which over a four-year period, amounted to $48,000.[7] As a result, the court concluded that Demming had "outlived" the "limited contributions" that he made during the parties' marriage and awarded Son the marital homestead. The court did not, however, acknowledge Demming's undisputed property tax, homeowner's insurance, and support payments, which if combined, amounted to more than $10,000 each year. Nor did the court acknowledge that Son and Demming jointly owned No. 7 Estate Bolongo prior to marriage under a 2002 deed of gift, which conveyed No. 7 Estate Bolongo to Son and Demming as tenants in common without specifying their respective shares, when it incorporated Demming's related $35,000 payment to Son into its contribution calculation. By failing to acknowledge — let alone interpret — the deed of gift, the court appears to have overlooked a substantial body of case law presuming that tenants in common receive an equal interest under an instrument that is silent as to their respective shares. *See Phaire v. Phaire*, 24 V.I. 311, 314-15 (D.V.I. App. Div. 1989) ("Where two persons take under a deed as tenants in common, and the deed does not recite their interests, the presumption must be that the

---

[7] Because Demming does not challenge the court's consideration of his exclusive use of the top floor of the marital homestead as an offset against his contribution toward that home, that issue is waived on appeal. *See* V.I.S.Ct.R. 22(m). Nevertheless, we note that a number of courts recognize that one spouse's exclusive use of a marital home may be a relevant factor in equitably distributing that same home. *See Sandberg v. Sandberg*, 322 P.3d 879, 890 (Alaska 2014) ("Where the use of marital property after separation effectively excludes the other spouse . . . the court must also consider whether any benefit . . . [one spouse] may have imparted to the marital estate was offset by the benefit [that spouse] received from the estate living rent-free." (alterations, citations, and internal quotation marks omitted)); *Burnett v. Burnett*, 122 N.C. App. 712, 471 S.E.2d 649, 652 (1996) ("A party's exclusive use of the marital residence subsequent to the date of separation is a relevant distributional factor . . . and must be considered by the trial court." (citation omitted)); *Palmer v. Protrka*, 257 Ore. 23, 476 P.2d 185, 190 (1970) ("When marital difficulties make . . . co-occupancy impossible, . . . [e]ach [spouse] should therefore be entitled to one half the rental value of the property[.]"); *Butler v. Butler*, 423 Pa. Super. 530, 621 A.2d 659, 668 (1993) ("[A]n equitable distribution scheme may include an award, to the non-possessing spouse, of one-half of the rental value of the marital residence, when possessed exclusively by the other spouse during the parties' separation."), *rev'd in part on other grounds*, 541 Pa. 364, 663 A.2d 148 (1995); *McIlwain v. McIlwain*, 52 Va. App. 644, 666 S.E.2d 538, 544 (2008) ("[T]he trial court did not abuse its discretion in crafting the overall equitable distribution of the parties' marital property by including . . . an amount to [one spouse] equal to one-half of the fair market rental value of the marital house from the date that the [parties] separated.").

shares of the parties are equal." (citations and footnote omitted)).[8] Had Demming received the benefit of the presumption in No. 7 Estate Bolongo, then his interest in the property at the time of marriage may have been significantly higher than the $35,000 with which he was credited. Therefore, without some explanation in the form of express findings and rulings, we are not in a position to meaningfully review whether the court erred by equating Demming's premarital interest in No. 7 Estate Bolongo with his $35,000 contribution and must remand for further proceedings. *See Mahabir v. Heirs of George*, 63 V.I. 651, 668-69 (V.I. 2015) ("[W]ithout some explanation . . . there is simply no way this Court can review the Superior Court's [decision]."); *James v. Faust*, 62 V.I. 554, 559 (V.I. 2015) (" '[M]eaningful review . . . is not possible where the trial court fails to sufficiently explain its reasoning.' " (quoting *In re Q.G.*, 60 V.I. 654, 660 (V.I. 2014))). On remand, the court shall consider Demming's unacknowledged contributions and also explain its calculation of Demming's premarital interest when it equitably distributes the marital homestead.

### B. The Superior Court's Consideration of Demming's Marital Fault

■ ■ Demming also argues that the Superior Court ignored our previous decision in *Garcia*, in which we held that marital fault could not be considered in an equitable distribution under title 33, section 2305(d). 59 V.I. at 783. We also held, however, that economic fault factors, that is, conduct relating to the economic position of the parties, could be considered. *Id.* at 783 n.9; *cf. Berrios-Rodriguez v. Berrios*, 58 V.I. 477, 485 n.2 (V.I. 2013) (noting that "the nature of the parties' lives together . . . can be relevant [in awarding no-fault alimony] to the extent

---

[8] *See also D.M. v. D.A.*, 885 P.2d 94, 96 (Alaska 1994) ("Tenants in common are presumed to take equal undivided interests in . . . property[.]"); *Bradford v. Dumond*, 675 A.2d 957, 961 (Me. 1996) (same); *Clark v. Dady*, 131 S.W.3d 382, 389 (Mo. Ct. App. 2004) (same); *In re Garland*, 279 Mont. 269, 928 P.2d 928, 932 (1996) (same); *Sack v. Tomlin*, 110 Nev. 204, 871 P.2d 298, 304 (1994) (same) (collecting cases); *McGuire v. McGuire*, 93 A.D.3d 701, 939 N.Y.S.2d 572, 574 (2012) (same); *Hallin v. Lyngstad*, 2013 ND 168, 837 N.W.2d 888, 893 (2013) (same); *Moore v. Miller*, 2006 PA Super 300, 910 A.2d 704, 709 (2006) (same); *MariChris, LLC v. Derrick*, 384 S.C. 345, 682 S.E.2d 301, 305-06 (2009) (same); *Whippie v. O'Connor*, 187 Vt. 523, 996 A.2d 1154, 1161-62 (2010) (same); *Bixler v. Oro Mgmt.*, 2004 WY 29, 86 P.3d 843, 850 (2004) (same); 20 Am. Jur. 2d *Cotenancy and Joint Ownership* § 116 (same).

necessary to ascertain 'the social and economic position of the family' " (quoting 16 V.I.C. § 341(g))); *Aster v. Gross*, 7 Va. App. 1, 371 S.E.2d 833, 836 (1988) ("Circumstances that lead to the dissolution of the marriage but have no effect upon marital property, its value, or otherwise are not relevant to determining a monetary award, need not be considered."). In its memorandum opinion, the Superior Court devoted large portions of its analysis to Demming's marital fault:

> Since the separation, [Son] has been denied access to the main portion of her home, forced to live in a small space, prevented from using any of the household items she purchased, and . . . has been *humiliated* by . . . Demming.
>
> . . . .
>
> [Son] neither got what she *deserved nor what she expected*. . . . Demming *took advantage of her and manipulated her* until he got what he wanted. He was being *manipulative* when he took [Son's] wedding ring back and he was *playing emotional games* when he *treated [Son] with disrespect, called her names*, and *denied her intimacy*. . . . She was *humiliated* when . . . Demming changed the locks and denied her entry into the main house, but allowed his nephew to reside in the home. This was *not what she deserved and clearly not what she expected*. . . . He *mistreated* and *exploited* [Son's] love and affection for him and has been unjustly enriched at her expense. Mr. Demming played a *mean trick* on [Son] by taking the wedding ring back, *verbally abusing* his wife, and denying her entry into the marital homestead.

(Emphasis added). Yet, the court failed to explain how Demming's conduct was relevant to the economic position of the parties.[9] *Garcia*, 59 V.I. at 783

---

[9] For example, a number of no-fault jurisdictions recognize that a trial court may consider the impaired earning capacity or related future medical expenses of a spouse even though it arises from the misconduct of another spouse. *See In re Sommers*, 246 Kan. 652, 792 P.2d 1005, 1010 (1990) (noting that the trial court could consider a wife's impaired earning capacity caused by her husband's "mental abuse"); *In re Fenzau*, 2002 MT 197, 311 Mont. 163, 54 P.3d 43, 47 (2002) (holding that the "prohibition against considering marital misconduct does not foreclose the [trial] court from considering the medical and financial needs of a spouse which result from the other spouse's physical, mental, or emotional abuse during marriage"); *In re Foran*, 67 Wn. App. 242, 834 P.2d 1081, 1091 (1992) (affirming the trial court's consideration of a wife's impaired ability to support herself caused in part by her

n.9. Without such an explanation, we are not in a position to meaningfully review whether the court erred in its consideration of Demming's conduct as part of its equitable distribution and must remand for further proceedings. *See Mahabir*, 63 V.I. at 668-69; *James*, 62 V.I. at 559. On remand, the court shall equitably distribute the marital homestead without any regard to marital fault. *Garcia*, 59 V.I. at 783.

## IV. CONCLUSION

The Superior Court erred in calculating Demming's net contribution toward the marital homestead because it failed to incorporate his undisputed property tax, homeowner's insurance, and support payments. We are unable to review, however, the court's calculation of Demming's premarital interest in the property and its consideration of Demming's marital conduct because it failed to explain its reasoning. Therefore, we vacate in part the Superior Court's May 8, 2015 divorce decree and remand for further proceedings consistent with this opinion.

---

husband's emotional abuse); *cf. Principles of the Law of Family Dissolution: Analysis and Recommendations*, 8 DUKE J. GENDER L. & POL'Y 1, 39-40 (2001) ("Courts in no-fault states have observed that domestic violence which leaves one spouse with increased medical costs or a reduced earning capacity may for this reason enlarge the victim's financial claims under no-fault principles." (citations omitted)). Such consideration is not an interjection of fault or an assignment of blame, but rather, merely recognizes the respective economic position of the parties as they exist and achieves a balancing of the equities. *In re Sommers*, 792 P.2d at 1010 ("The court, in such circumstances, is not imposing a penalty for fault but is considering the circumstances of the parties as they exist and making its award based on such existing circumstances and the likely future results arising therefrom."); *In re Fenzau*, 54 P.3d at 47 ("Consideration of the economic effects of abuse . . . is not an interjection of fault or an assignment of blame . . . . If the economic impact of abuse is excluded from consideration in making a division of the marital estate, a truly equitable apportionment cannot result.").