**GOVERNMENT OF THE VIRGIN ISLANDS, Plaintiff**

v.

**EZRA THOMAS, Defendant**

J.D.R. No. 24-71

Municipal Court of the Virgin Islands

Div. of St. Croix

Frederiksted Jurisdiction

October 27, 1971

FRANK PADILLA, ESQ., Frederiksted, St. Croix, V.I., *for defendant*

JOSEPH TARGIA, ESQ., Christiansted, St. Croix, V.I., *for plaintiff*

GEOFFREY W. BARNARD, ESQ., Frederiksted, St. Croix, V.I. (on the brief for plaintiff)

JOSEPH, *Judge*

### MEMORANDUM

Defendant, Ezra Thomas, is charged with gambling, in violation of Title 14, Section 1224(2) of the Virgin Islands Code. At the close of the Government's case, defense counsel made a motion to dismiss. Ruling was reserved by this Court, on defense motion, until after submission of written briefs. The briefs raise a single issue: the scope of the gambling statute and whether or not the Legislature intended to limit the prohibitory conduct specified therein to commercial situations or whether all gambling, including the "casual" or "private" kind is prohibited by the statute.

The facts of the instant case are not in dispute. Evidence adduced at trial showed that Ezra Thomas was caught in the act of gambling with dice in a private apartment. The arresting officer had entered the building at #44 Queen Street, Frederiksted, in the course of his duties and

while passing down a hallway had heard the noise of "snapping fingers" and "clicking sounds" coming from a room off the hallway. The door to the room happened to be ajar, and the police officer was able to observe the dice playing and noticed money in the hands of several participants.

No evidence was produced at trial, however, showing who owned the room or rented it other than the fact that the arresting officer states it was a private room. Nor was there any evidence as to how the dice game got started, who were the participants, or what were the qualifications for entry.

■ Under the view urged by the Government, answers to these questions are irrelevant, since it is the Government's contention that 14 V.I.C., Section 1224, prohibits gambling and games of chance, casual and commercial. The Government's brief abhors the vision of "unemployed teenagers huddled over dice in a smoky room, gambling with stolen money . . ." if this Court were to sanction private or casual gambling under the statute. As deplorable or as unattractive as this vision may be, it is not grounds for enforcing a doubtful or uncertain law. Popular concern over the enforcement of a law adds nothing to the judicial function of determining what the law is, nor is it proper for the court in construing a statute to substitute its own ideas as to the policy of the law. The primary objective of judicial interpretation, when a question is raised as to the scope or coverage of a particular statute, is to determine legislative intent. See U.S. v. N.W. Rosenblum Truck Lines, 315 U.S. 50 (1942) (Legislative will is the all important or controlling factor.). In a Virgin Islands case, the Third Circuit had occasion to state:

"It is an established canon of statutory construction that all the provisions upon a subject are to be harmonized and read together so as to effectuate the purposes of the statute, this is to be done in light of the presumed desire and intent of the

legislature . . . ." Port Construction Co. v. Gov. of the V.I., 5 V.I. 549, 359 F.2d 663 (3rd Cir. 1966) at 553–554.

██ If a statute is explicit and unambiguous in its language and intent, judicial interpretation or construction (both terms are used synonomously) is improper. Interpretation is appropriate where a challenged statutory provision might reasonably bear two or more constructions. Hadden v. Barney (The Collector), 5 Wall. (U.S.) 107 (1867). In the instant case, 14 V.I.C., Section 1224, is such a provision:

"Section 1224. Gambling
 Whoever—
 (1) deals, plays, carries on, opens or conducts, either as owner or employee, either for hire or not, any game of chance played with dice, cards, slot machines or any other device, for money, checks, credit or other representative of value; or
 (2) plays or bets at or against any such game; or
 (3) is willfully present where any such game is being played— shall be fined not more than $200 or imprisoned not more than 180 days, or both."

The threshold question before us is whether the phrase, "either as an owner or employee, either for hire or not", modifies the entire statutory provision and thereby limits the kind of gambling activity prohibited, or whether the phrase stands independently, intending to specifically curb the activities of those that oversee gambling activities while the rest of the statute creates criminal liability for all others who participate at any game of chance. Legislative history behind the statute fails to clarify the issue or reveal the intent of the lawmakers. It is also proper, in interpreting a statute, that is similar to, or may have been adopted from a foreign jurisdiction to pay heed to the judicial construction already placed on such statutes by the highest courts of those jurisdictions. Marlin v. Lewallen, 276 U.S. 58 (1928).

Historically, the gambling statutes in at least two jurisdictions, Alaska and Oklahoma,[1] were identical to 14 V.I.C., Section 1224(1), in their basic choice of words and sentence construction. Two revealing interpretations of the Oklahoma statute were made by the highest criminal court of that state shortly after that statute was enacted. In James v. State, 4 Okla. Cr. 587, 112 P. 944, the court stated that, "[t]his statute makes it an offense for any person to conduct either as an owner or as an employee, whether for hire or not, any game played with and by certain devices. . . ." 112 P. at 945. Any doubt as to whether other persons were intended to be covered by the statute was removed by this same court in a subsequent decision, apparently involving the same defendant. The Oklahoma court held in James v. State, 113 P. 226 (Okl. Cr. 1910), that the law did not provide for the punishment of those who bet on any gambling device, but only those who conduct them since "the purpose of the statute was not aimed exclusively at any particular game or species of games, but was intended more effectually to suppress every kind of *public* gaming in the State of Oklahoma." 113 P. at 229. (Italics added.)

Although not controlling, these views are significant in the absence of uncovering in our research contrary judicial interpretations of similar statutes. Whether this Court reaches the same conclusions that the Oklahoma court reached must depend upon our independent analysis

---

[1] Alaska Comp. Law 1913, Sec. 2032.

That each person and every person who shall deal, play, or carry on, open or cause to be opened, or who shall conduct, either as owner, proprietor or employee, whether for hire or not, any game of faro . . . dice . . . whether the same shall be played for money, checks, credit, or any other representative of value shall be guilty of a misdemeanor.

Synder's Comparative Laws of Oklahoma 1909, Sec. 2422.

That every person who deals, plays, or carries on, or opens or causes to be opened, or who conducts, either as owner or employee, whether for hire or not, any game of faro, monte . . . craps, is guilty of a misdemeanor.

22

of 14 V.I.C., Section 1224, in accordance with accepted principles of statutory interpretation.

Courts often follow the dictates of Chief Justice Marshall[2] in looking at the history of the times when a statute was passed, including the habits, customs, or activities of the people. As a general rule, however, gambling statutes, since they are penal in nature, are ordinarily construed strictly in favor of one accused of a violation thereof. See 38 Am. Jur. 2d "Gambling", Section 12 at 117 (and cases cited therein). Strict construction of a penal statute means that it is not to be extended by inference or implication.

 The law is clear that any reasonable doubt as to whether any act is a public offense under the statute is to be resolved in favor of the individual.[3] No intent may be attributed to the legislature other than that which is supported by the face of the law itself. Denn ex dem. Scott v. Reid, 10 Pet. (05) 524, 9 Ced. 519.

 Thus our focus in the instant case must be on the relationship of the words in question to the statute as a whole, and the interpretative significance that is derived from their use and placement in the statute. It is proper to presume that a legislature knows the meaning of words, has used the words of a particular statute advisedly, and has expressed its intent by these words as found in that statute. See State ex rel. Atty. Gen. v. Anderson-Tully Co., 186 Ark. 170, 53 S.W.2d 17; Van Pelt v. Hilliard, 75 Fla. 792, 78 So. 693.

 The Government in its brief in this instant case suggests, by way of example apparently, that subsection (1) of Section 1224 can best be understood by altering

---

[2] In U.S. v. Fisher, 2 Cranch (U.S.) 358 (1804), Chief Justice Marshall observed, "Where the mind labors to discover the design of the legislature, it seizes everything from which aid can be derived."

[3] Todd v. U.S., 158 U.S. 278 (1895); U.S. v. Hartwell, 6 Wall. (U.S.) 385, (1868).

the punctuation. The Government replaces commas with semi-colons, except after the words ". . . or conduct, either as owner or employee, either for hire or not, any game of chance. . . ." After isolating this phrase in its own grammatical fashion, the Government then admits that this part, and only this part, of the statute could arguably refer to commercialized gambling. We disagree. It is not the province of the court to insert in a statute that which has been omitted. U.S. v. Monia, 317 U.S. 424 (1942). In lieu of other means of determining legislative intent, it is proper, if not necessary, to refer to the original punctuation of a statute as an aid in interpreting doubtful provisions. Northern P.R. Co. v. U.S., 227 U.S. 355 (1912). Cases have held that the presence of a comma separating a modifying clause in a statute from the clause immediately preceding is an indication that the modifying clause was intended to modify all the preceding clauses and not only the last antecedent one. Service Invest. Co. v. Dorst, 232 Wisc. 574, 288 N.W. 169. See also 134 A.L.R. 539 Annotation. A conclusion to this effect in the instant case is supported by an analysis of the phrasing used in subsection (1). Where several words in a statute are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the expression or clause be read as to all. Porto Rico R. Light & P. Co. v. Mor., 253 U.S. 345 (1919). The phrase "either as an owner or employee, either for hire or not", is equally applicable to the words "deals", "plays", or "carries on" as it is to "opens" or "conducts". It is a general rule of law[4] that where general and specific words in a statute are associated together, and which are capable of analogous meaning, they take color from each other, so that the general words are restricted to a sense analogous to the less general. Kirkley v. Portland Electric Power Co., 136 Ore.

---

[4] Rule of Ejusdem Generis. See Re Stryker, 158 N.Y. 526, 53 N.E. 525.

24

421, 298 P. 237. By "conducting" a game an owner or employee may very well be "carrying on" the game by "playing" or "dealing"—disjunctive distinctions between these words are clearly inappropriate.[5]

Subsection (2) of Section 1224 expands liability to anyone who "plays or bets at or against any such game". The word "such" logically refers to the type of activity prohibited by subsection (1). Defendant Thomas was charged under subsection (2) for participating and being wilfully present in a game of chance as described in subsection (1). Under our view of the statute, a conviction in this case, and in any case where a gambling offense is alleged under the statute, would have to be supported by evidence showing that the activity in question involved either "an owner or employee, either for hire or not". Without this necessary element of proof, there can be no conviction under the statute. Since the evidence in the instant case is insufficient on this point, the motion to dismiss must be granted.

However, this opinion is not meant as a license for all forms of casual gambling which lack the above commercial aspect. According to 1 V.I.C., Section 4, the rules of common law, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary. As the defense in the instant case points out, gambling at common law was not *per se* a crime. But gambling activities *were* unlawful at common law if they constituted a nuisance, or tended towards immorality. See 12 R.C.L., Section 3 at 708; 38 Am. Jur. 2d, Gambling, Sec. 16 at 120. It is not the province of this opinion to explore the parameters of gambling activ-

---

[5] "Conduct" is defined in 38 C.J.S. Gaming, Section 1 at 54, as meaning "to direct the course of it [gambling or like business], to manage it, or to *carry it on*." Italics added.

ities which are nuisances, other than to note that evidence presented to show such conduct could support a conviction in this jurisdiction, notwithstanding the limitations of 14 V.I.C., Section 1224, discussed herein.

It has been said that the law is presumed to be equitable and that it is a reasonable and safe rule of construction to resolve any ambiguity in a statute in favor of an equitable operation of the law. U.S. v. City Nat. Bank, 31 F.Supp. 530 (Minn. 1939); see also Sorrells v. U.S., 287 U.S. 435 (1932). According to the Commissioners Note to Section 3 of the Model Anti-Gambling Act,[6] it is doubtful whether "social gamblers" have been "unduly harassed" under many state laws which penalize all forms of gambling without exception. Notwithstanding the recognized prevalence of this phenomena, it is not the duty of a court in construing an uncertain statute in the absence of clear legislative guidelines or intent to arrive at a construction which permits haphazard enforcement of a law, whether unavoidable or not, at the expense of an interpretation which would lead to a fair application of the statute. If public welfare demands a change in the law, as an adjunct to common law liability in this area, whether that change is to statutorily carve out permissible forms of social gambling or to blanketly prohibit them, it is an action to be taken by the legislature and not by courts in the guise of interpretation.

---

[6] This act was approved by the Conference of Commission or Uniform State Laws and the American Bar Association in 1952. The Act has been adopted by Indiana and Tennessee. An optional provision proposed for insertion in Section 3 of the Act exempts natural persons who gamble without direct or indirect professional involvement.