**NORMAN MARTIN, Appellant/Defendant**
**v.**
**ALVINA MARTIN, Appellee/Plaintiff**

S. Ct. Civ. No. 2012-0097

Supreme Court of the Virgin Islands

June 28, 2013

620

BEVERLY A. EDNEY, ESQ., St. Croix, USVI, *Attorney for Appellant.*

DOLACE MCLEAN, ESQ., Visions Law Firm, P.C., St. Thomas, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; SWAN, *Associate Justice*, and MOORE, Designated Justice.[1]

## OPINION OF THE COURT

(June 28, 2013)

HODGE, *Chief Justice.* Norman H. Martin appeals from a final order entered by the Family Division of the Superior Court of the Virgin Islands on July 11, 2012, which granted his ex-wife, Appellee Alvina M. Martin, exclusive right and title to their marital home and which denied his request for alimony. For the reasons that follow, this Court will affirm the trial court's order.

## I. STATEMENT OF FACTS AND PROCEDURAL POSTURE

Alvina and Norman Martin married on July 3, 1976. On October 16, 1980, Norman's father gifted to the couple their marital home located at 173 Estate Catherine's Rest, Christiansted, St. Croix. (J.A. 414.) Together, the couple had three children. (J.A. 50.) Eventually, their marriage encountered difficulties and on July 28, 1995, they signed a separation agreement. (J.A. 219.) Norman moved out of the marital home. Ultimately, Alvina sued for divorce on November 4, 1997. (J.A. 404.) She requested that the court grant her exclusive possession of the marital residence, dispose of all other marital property, and grant her maintenance and support for herself and their then-minor children. (J.A. 404.) Norman answered the complaint and counterclaimed, requesting that the court grant an equitable distribution of the properties. (J.A. 402-03.) The court granted the parties a divorce on March 27, 1998, and reserved further proceedings, which focused on the distribution of the marital homestead and requests for maintenance and support. (J.A. 412.) At some point, one of the parties commenced a separate action to request distribution of all other real property, aside from the marital homestead. *See Martin v. Martin*, 54 V.I. 379 (V.I. 2010).

---

[1] Associate Justice Maria M. Cabret is recused from this matter. The Honorable Thomas K. Moore has been designated to sit in her place pursuant to title 4, section 24(a) of the Virgin Islands Code.

During the trial, which began on May 21, 2012, Alvina and Norman each provided evidence regarding the status of their marriage, their economic circumstances, and the perceived inadequacies of the opposing party as a spouse. Alvina testified about Norman's cocaine use, his infidelity, and his domestic abuse — including the firing of a gun over her head while the children were in the house, as well as verbal abuse and threats. (J.A. 37, 39-40.) She also testified that, on occasion, he would tap her phone. (J.A. 36.) From time to time, she said, Norman would leave for days or weeks. (J.A. 40, 184-86.) She also stated that Norman had affairs with other women. (J.A. 46-47.) Norman admitted to these accusations, although he stated that the affairs took place after the parties had entered into a separation agreement. (J.A. 260, 265-66, 278, 300.) Norman suggested that Alvina was also unfaithful during the time of their marriage. He called a witness who testified that Alvina was on a hotel room floor with a man, although the witness did not see them having sexual intercourse, and that on another occasion Alvina admitted to having intimate relations with a man in his house. (J.A. 329, 331.) Alvina denied ever having any extramarital affairs. (J.A. 258.)

Alvina testified that she earned about $68,500 in gross income per year, but that she could not work consistently because of health problems. (J.A. 65, 169.) She further indicated that she could not afford to pay alimony, and was in arrears with credit card and other bills. (J.A. 64, 161-62.) She stated that she invested about $168,000 into the marital home — which the record indicates has an assessed value of $223,000 — and that Norman did not contribute money for house repairs and renovations, a fact which Norman admitted. (J.A. 74, 198, 380.) Alvina paid all of the property taxes herself since 2006. (J.A. 190.) She has also paid the homeowner's and hurricane insurance bills herself, at least since the divorce. (J.A. 449, 462-72.)

Norman has a certificate of completion in electricity (J.A. 69, 459), and has worked intermittently for various employers, sometimes as a pipefitter, sometimes as a painter. (J.A. 70-71, 91-92, 367-68.) As a result of Norman's father's gift of real property, Norman and Alvina jointly owned at least thirty acres of property. (J.A. 275.) On part of that land, Norman maintained a farm, and on the other part the couple maintained apartments that they rented out. Norman testified that he earned income from a farm on which he kept about 200 sheep and goats, and six cattle. (J.A. 269.) He also earned income — approximately $34,000 a year —

from the rental apartments, but indicated that he did not share any of that income, or the farm income, with Alvina during their marriage. (J.A. 275, 279, 284, 237.) Norman stated that he last sought employment outside of the farm in 2008 or 2009. (J.A. 367.) He testified that he could not work more than four hours a day because of a pinched nerve.[2] (J.A. 356, 358.) However, he did not provide any testimony or other evidence as to his current income. (J.A. 270.) He testified that he owns a boat, worth about $1,500; an inoperable 1984 truck worth about $1,000; a 1995 flatbed truck of undisclosed value; and a tractor valued at approximately $5,000 to $6,000. (J.A. 271-73.) He also owns a 1966 Chevrolet Impala in classic condition, but stated that he would not be willing to sell it. (J.A. 312.) When asked by his own attorney why he should receive alimony from Alvina, he replied, "I can't answer that. I don't know. You got me thinking here. I can't get the thought in my mind right now." (J.A. 368.)

■ The court issued a ruling entitled, "Findings of Fact, Conclusions of Law, and Order" on July 11, 2012. Norman filed a Motion to Reconsider on July 23, 2012, which Alvina opposed. The court denied the motion on September 4, 2012. This timely appeal ensued.[3]

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

■ This Court has jurisdiction over appeals from final judgments, final decrees and final orders of the Superior Court. V.I. CODE ANN. tit. 4, § 32(a). Because the July 11, 2012 Findings of Fact, Conclusions of Law and Order fully disposed of all the claims then before the Superior Court, the Order was final and this Court therefore has jurisdiction. *See* *Walters v. Parrott*, S. Ct. Civ. No. 2009-0049, 2013 V.I. Supreme LEXIS 18 (V.I. Apr. 30, 2013).

The standard of review of the Superior Court's application of law is plenary, while the trial Superior Court's findings of fact are reviewed for

---

[2] To contradict this testimony, Alvina testified and produced photographic evidence regarding Norman's landscaping work, his building of a cattle pen, horse stable and a shed, and his work on his boat. (J.A. 103.)

[3] Norman filed his Notice of Appeal on September 21, 2012, within thirty days of the denial of his motion for reconsideration. Because his motion for reconsideration itself was timely, it tolled the time to appeal the underlying Order, which was issued on July 11, 2012. V.I.S.CT.R. 5(a)(4)(iii).

clear error. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007); *see also People v. John*, 52 V.I. 247, 255 (V.I. 2009) (quoting *United States v. Shields*, 458 F.3d 269, 276 (3d Cir. 2006)), *aff'd*, 654 F.3d 412, 55 V.I. 1324 (3d Cir. 2011). The Superior Court's distribution of marital assets in an action for divorce is reviewed for abuse of discretion. *See Harvey v. Christopher*, 55 V.I. 565, 572 (V.I. 2011).

■ A motion for reconsideration filed within fourteen days after the issuance of the order complained of will be treated as a motion filed pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. *See Beachside Assocs., LLC v. Fishman*, 53 V.I. 700, 714-15 (V.I. 2010). A Rule 59(e) motion will be granted only if the movant can demonstrate "(1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." *Id.* at 715 (quoting *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010)). "The appropriate standard of review for the denial of a motion to reconsider is generally abuse of discretion but, if the trial court's denial was based upon the interpretation or application of a legal precept, then review is plenary." *Worldwide Flight Servs. v. Gov't of the V.I.*, 51 V.I. 105, 108 (V.I. 2009) (internal quotation marks and citation omitted).

## B. Grant of Marital Home to Alvina

■ Section 2305(d) of title 33 has been applied by courts within the Territory — including this Court, *Bradford v. Cramer*, 54 V.I. 669, 676-77 (V.I. 2011) — to provide the divorce court with authority to dispose of the marital homestead in a divorce case. Section 2305 appears within title 33, "Taxation and Finance," and further within subtitle 2, "Property Taxes." It provides as follows, in relevant part:

§ 2305 Homestead Exemption

(a) For the purposes of this section a homestead shall constitute the abode including land and buildings, owned by, and actually occupied by, the property owner, or by members . . . of the property owner's family free of rental charges.

. . . .

(d) The homestead protection and tax credit provided in this section shall continue to attach to the property after the death of the owner thereof, and shall inure to the favor of the surviving spouse while the

latter continues to occupy the said homestead, and after the death of both spouses, to the favor of their children until the youngest surviving of these shall have attained majority. In case either spouse shall abandon the home, the homestead protection and tax credit shall continue in favor of the spouse who occupies the property as a dwelling; *and in the case of a divorce, the court which grants it shall make disposition of the homestead in accordance with the equity of the case.*

33 V.I.C. § 2305(a), (d) (emphasis added).

▰ Here, the court ruled that Alvina should have exclusive right to, title in and possession of the marital home at No. 173, Estate Catherine's Rest. The court's Findings of Fact[4] and Conclusions of Law did not separate for the purposes of appellate review which findings were relevant to the award of the home, and which were relevant to the denial of alimony. Therefore, our task — which is to determine whether the court abused its discretion by awarding the property to Alvina — is made more complicated as a result.

▰ Nonetheless, the trial court did make a number of findings relevant to the "equity of the case"[5] that support the trial court's ultimate decision to award the home to Alvina. First, the property is jointly owned by the parties and, secondly, the court noted that Alvina has contributed

---

[4] Although the trial court entitled the ruling, *"Findings of Fact,* Conclusions of Law and Order," some of the factual statements simply restate what the parties testified to at trial and cannot reasonably be said to be actual "findings" by the court. (J.A. 25-28.) For example, at least six of the thirty-three findings begin with phrases such as, "Defendant alleges" or "Plaintiff claims." The trial court, as the institution responsible for fact-finding in a case tried to the bench, should have made explicit findings of fact. SUPER. CT. R. 106 (stating that in Family Division cases, the court must state "for whom the court finds, and the order of the court, *based on its findings,"* implying that the court must make factual findings on the record) (emphasis added).

[5] Both parties appear to agree that the court may consider marital fault when disposing of the homestead. The United States Court of Appeals for Third Circuit concluded in 1986 that the Legislature's 1973 revision of the divorce and support provisions in title 16 to eliminate fault as a consideration did not impliedly modify the phrase "equity of the case," and the court further concluded that "equity" encompassed fault. *Charles v. Charles,* 788 F.2d 960, 963-67 (3d Cir. 1986). If fault were a proper consideration, it would support the trial court's award of the marital home to Alvina, based on Norman's history of domestic abuse, infidelity and drug use. However, the court need not reach the question of whether the Third Circuit was correct in *Charles* that fault is a proper consideration in the award of a marital home pursuant to section 2305 of title 33, because even without consideration of the respective faults of the parties, the evidence supports the trial court's disposition of the property, as discussed *infra.*

$168,000 for renovations and repairs to the home that is worth $223,000. (J.A. 28.) This conclusion is buttressed by Alvina's testimony, as well as a number of receipts and other documentary evidence she submitted into evidence. Furthermore, Alvina has paid the property taxes and homeowner's insurance for the home since 2006. The record also indicates that Norman had moved out of the home around the time of their separation in 1995, and has not moved back. *See Boisvert v. Boisvert*, 190 Vt. 658, 24 A.3d 595 (Vt. June 7, 2011) (unpublished) (affirming grant of marital assets to husband, in part because wife had moved out for a 10-year period previously, and had not contributed to the maintenance of the household or paid the mortgage in that time). Instead, Norman has remarried several times, and has resided in one of the other properties owned jointly with Alvina, or, from time to time, has lived in the other rental apartments with his subsequent wives. (J.A. 48.) Alvina, on the other hand, has remained in the marital home and has been improving it for many years, and has continued to raise their children there. Consequently these facts establish — even without considering the respective faults of the parties — that the trial court did not abuse its discretion in awarding the marital home to Alvina.

## C. Denial of Alimony to Norman

Norman argues that the trial court erred when it denied him alimony.[6] Courts are authorized to award alimony by sections 109 and 345 of title 16 of the Virgin Islands Code. Section 109 provides in relevant part:

> (a) Whenever a marriage is declared void or dissolved the court may, without regard to any determination that the breakdown of the marriage was the fault of one party or the other, further decree:
>
> . . . .
>
> (3) for the recovery for a party determined to be in need thereof an amount of money in gross or in installments, as may be necessary for the support and maintenance of such party . . . .

16 V.I.C. § 109(a).

---

[6] Norman requested Alimony in his Amended Answer, stating that he was "in debt and is in need of alimony and [Alvina] can well afford to pay [him] alimony." (J.A. 400.)

■■ Support may also be provided pursuant to the authority provided in the "Support for Relations" chapter of title 16. Section 341(g) defines "support" as used in title 16 to include alimony, and it indicates that the obligation for support "include[s] all that is indispensable for maintenance, housing, clothing and medical attention *according to the social and economic position of the family.*" Section 345(a) further guides the trial court, stating that "[t]he amount provided for support . . . shall be proportioned to the resources of the person giving such support and to the necessities of the party receiving it, and shall be reduced or increased in proportion to the resources or the necessities of the latter." Finally, section 110 makes clear that the court can modify alimony awards upon the motion of either party.

■ These sections, taken together, make clear that the trial court is *not* to consider marital fault in granting alimony but must instead consider only the resources of the person giving such support and the party receiving it. 16 V.I.C. §§ 109(a)(3), 345(a); *see Charles v. Charles*, 788 F.2d 960, 963 (3d Cir. 1986) (noting that the Legislature amended the relevant statutes in 1973 to eliminate any consideration of fault and to transform the statutes relating to divorce and alimony into need-based provisions); *Berrios-Rodriguez v. Berrios*, S. Ct. Civ. No. 2012-0090, 2013 V.I. Supreme LEXIS 23, at *6-14 (V.I. June 18, 2013) (explaining that testimony pertaining to fault of a spouse in a divorce case "is . . . wholly irrelevant to the question of alimony" as a result of the 1973 amendment to 16 V.I.C. § 109, and articulating the test for an alimony award to, *inter alia*, "strike[] the appropriate balance between the party in need of support . . . and the other party's ability to pay").

In this case, it is not clear whether the trial court considered martial fault in its alimony determination. It made findings relevant to fault, but as noted above, it did not separate in its ruling the facts it found supporting the disposition of the marital home, and the facts that it considered relating to its alimony decision. This type of conflated ruling is strongly discouraged, as it leaves the reviewing court without a clear indication of whether the trial court impermissibly considered fault in its alimony award.

Nonetheless, even if the trial court did impermissibly consider fault — an argument not raised by Norman — its error would be harmless. V.I.S.Ct.R. 4(i). There are sufficient findings in the court's ruling, supported by the record, to affirm a denial of alimony to Norman. During

the trial, Norman failed to provide evidence as to his need for alimony. He testified that he has been living apart from Alvina for the better part of fifteen years since she sued for divorce, and even for some years before that when they separated, but he did not suggest — let alone prove — that he was in need or destitute without her support. *See Alleyne v. Alleyne*, 18 V.I. 544, 546 (D.V.I. App. Div. 1981) (affirming trial court's denial of alimony award in part because the wife had not received support from husband for some years, and had lived independently without the need for her husband's support or welfare). There is no evidence that he was unable to maintain himself, provide for his own housing — he apparently lives in an apartment jointly owned by himself and Alvina — or provide clothing for himself. He did indicate that he needed medical care for a pinched nerve in his back, but the trial court may have considered this to be a dubious and incredible claim, considering the manual labor that Norman has been performing on his farm for decades. Furthermore, if his need for care were truly pressing, he had assets he could sell to obtain that care, such as the 1966 "classic" Impala he owns, or his boat, or some of the farm animals on his property. Moreover, although he has indicated that there are jobs he could do that would not be affected by his back pain — such as painting for the Water and Power Authority — he has not attempted to look for such work in some time. Tellingly, as noted above, when asked by his own attorney why he believed he should receive alimony from Alvina, he admitted that he did not know of a basis for such an award, stating: "I can't answer that. I don't know. You got me thinking here. I can't get the thought in my mind right now." (J.A. 368.)

Alvina, meanwhile, does not have an excess of money. Although she earns $68,500 before taxes each year, she indicated that this amount is less when she is unable to work because of health problems. In addition, she testified that she has significant credit card debt, and owes money on loans taken out to improve the house, and has even sought the assistance of credit counseling services to begin to resolve her outstanding debt. She spends approximately $9,600 per year on food and living expenses, and more than $1,000 on her phone bill. She continues to pay property taxes, utilities, and homeowner and hurricane insurance for the property.

■ Considering Alvina's limited resources and the lack of proof of need on the part of Norman, we conclude that the trial court did not abuse its discretion when it denied Norman alimony. Should his condition

deteriorate, Norman is free to move the trial court to amend the alimony determination. 16 V.I.C. § 110.

### D. Denial of Norman's Motion for Reconsideration

■ After the trial court issued its Findings of Fact, Conclusions of Law and Order, Norman filed a Motion for Reconsideration[7] on July 23, 2012. Alvina opposed the Motion, and the trial court denied it on September 4, 2012. Norman's Motion for Reconsideration was properly denied. He argued that the trial court failed to consider certain evidence, but the evidence he cites to is either irrelevant,[8] or may well have been considered by the court.[9] His motion failed to demonstrate that there was "(1) an intervening change in controlling law;" (2) newly available evidence; or (3) a "need to correct clear error of law or prevent manifest injustice." *Beachside Assocs.*, 53 V.I. at 715. For this reason, we affirm the trial court's denial of Norman's Motion for Reconsideration.

### III. CONCLUSION

The Superior Court correctly considered the equities of the case when disposing of the marital homestead, and the record establishes that the court did not abuse its discretion in awarding the home to Alvina Martin. Furthermore, the trial court did not abuse its discretion when it denied alimony to Norman Martin. For these reason, we affirm the July 11, 2012

---

[7] As discussed above, we treat the Motion for Reconsideration as a motion filed pursuant to Rule 59(e) of the Federal Rules of Civil Procedure.

[8] For example, he faults the court for failing to recognize that the property was given to the parties by Norman's father. However, it is well established that a grant of property to husband and wife is considered a tenancy by the entirety, unless there is some evidence to the contrary within the deed. 28 V.I.C. § 7(c). The property here was granted to the couple approximately four years after they married and there is nothing to suggest that any other estate was intended. In addition, he states that the court failed to consider the income he received from the sale of his animals. However, Norman provided scant evidence of this income, and stated that it differs month-to-month; furthermore, if the trial court considered that Norman did not receive any income from the sale of the animals, that would bolster, rather than diminish, his alimony claim. Consequently, if there was an error, it was in his favor.

[9] For example, Norman suggests that Alvina presented no evidence to support the trial court's finding that she had invested $168,000 in the property. First, Alvina testified to that, and oral testimony is as probative as documentary evidence. Second, Alvina produced a significant number of receipts relating to her purchases of goods and services for the renovation of the home, none of which Norman challenged.

Findings of Fact, Conclusions of Law and Order, and the September 4, 2012 Order denying the Motion for Reconsideration.