# IN THE MATTER OF THE ESTATE OF RALPH A. GEORGE, Deceased

S. Ct. Civil No. 2012-0085
Supreme Court of the Virgin Islands
October 11, 2013

MARK L. MILLIGAN, ESQ., Mark L. Milligan, P.C., St. Croix, USVI, *Attorney for Appellant*.

SAMUEL T. GREY, JR., ESQ., Nichols Newman Logan & Grey, P.C., St. Croix, USVI, *Attorney for Appellee*.

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice*.

## OPINION OF THE COURT

(October 11, 2013)

CABRET, *Associate Justice*. The Estate of Ralph A. George appeals from a July 27, 2012 Order issued by the Appellate Division of the Superior Court, which affirmed a February 17, 2010 Final Adjudication entered by the Magistrate Division of the Superior Court. For the following reasons, we reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Ralph A. George, a resident of St. Croix, died intestate on October 21, 1999. He was survived by his wife, Floretta J. George, and several children, including Lawrence George. Although Floretta and Lawrence both petitioned the Family Division of the Superior Court for appointment

as administrator of the Estate, the Family Division issued Letters of Administration to Lawrence.

On December 16, 1999, Floretta moved the Superior Court for spousal maintenance and support payments in the amount of $1,000 per month, without suggesting any temporal limit on that support. After his appointment as administrator, Lawrence objected to Floretta's motion because no inventory had been prepared or filed. Floretta renewed her motion on July 19, 2000, citing chapter 21 of title 15 of the Virgin Islands Code for the proposition that she was entitled "to remain in the house and collect support out of the estate for one year." (J.A. 24.)

Once the Estate filed an inventory in December 2000, the Family Division held a hearing on Floretta's renewed motion. In a February 5, 2001 Order, the Family Division directed the Estate to allow Floretta to remain in the marital homestead, and to pay her $700 in support payments each month. However, the February 5, 2001 Order did not specify an end date for these payments. Ultimately, the Estate ceased making payments to Floretta in May 2003, informing her in a June 2, 2003 letter that the relevant statutory provisions limited spousal support only to one year. In its letter, the Estate also informed Floretta that it would seek reimbursement for $11,200 in "excess" payments made from February 2002 to May 2003.

For inexplicable reasons, the probate matter then lay dormant for four years, with neither the parties nor the Family Division taking any further action. The Estate did not file any accountings or inventories, and made no effort to collect the "excess" disbursements; likewise, Floretta took no action to reinstate the suspended spousal support payments. Finally, in June 2007, the Estate filed a "Motion for Declaratory Judgment," which sought a determination that Floretta was never entitled to the $11,200 in excess payments. The Family Division, in an October 25, 2007 Order, rejected the Estate's argument, directed the Estate to resume spousal support payments until the Estate was closed, and to pay Floretta $37,700 in back support.

Although the Estate attempted to immediately appeal that decision, this Court dismissed that appeal for lack of jurisdiction because the October 25, 2007 Order did not constitute an appealable final judgment. *Estate of George v. George*, 50 V.I. 268, 274 (V.I. 2008). While its interlocutory appeal remained pending, the Estate filed a motion for the Family Division to reconsider its October 25, 2007 Order. In a February 20, 2009

Opinion, the Family Division denied the Estate's motion, but explained, in greater detail, why it ordered continuing spousal support notwithstanding the fact that chapter 21 of title 15 explicitly limits such support to only one year. Eventually, the Estate resumed making spousal support payments and paid the required back support.

At some point, for reasons not disclosed in the record, the matter was transferred from the Family Division to the Magistrate Division. *See* 4 V.I.C. § 123(d). Eventually, the parties negotiated a final accounting, and the Magistrate Division issued a Final Adjudication on February 17, 2010, which explicitly referenced the spousal support payments previously awarded and paid to Floretta.

On February 22, 2010, the Estate appealed the February 17, 2010 Final Adjudication to the Appellate Division of the Superior Court. In its brief, the Estate argued that the Family Division's spousal support orders were contrary to title 15. Floretta, in turn, contended that the Final Adjudication did not relate to spousal support and, in any event, that spousal support payments in excess of one year are authorized by Virgin Islands law.

In a July 27, 2012 Order, the Appellate Division noted that it found the Estate's appeal "troubling to say the least" because the Final Adjudication had been agreed to by all the parties, including the Estate. (J.A. 292.) The Appellate Division also concluded that it had no authority to review the spousal support orders entered by the Family Division prior to the transfer to the Magistrate Division, because "[t]here is . . . no statutory mechanism in the Virgin Islands Code that allows for a judge of the Superior Court of the Virgin Islands to review an appeal of another judge of the Superior Court of the Virgin Islands." (J.A. 293.) Nevertheless, the Appellate Division summarily concluded that, even if it had such authority, the Estate's argument "has no merit." (J.A. 294.) The Estate timely filed its notice of appeal on August 23, 2012.

## II. JURISDICTION

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." V.I. CODE ANN. tit. 4, § 32(a). An order by the Appellate Division adjudicating an appeal from a judgment entered by the Magistrate Division is a final appealable order under section 32(a). *Lehtonen v. Payne*, 57 V.I. 308, 312 (V.I. 2012); *H & H Avionics, Inc. v. V.I. Port Auth.*, 52 V.I. 458, 461-63 (V.I. 2009).

## III. DISCUSSION

The Estate argues that the Appellate Division erred in concluding that it could not review the October 25, 2007 Order or the February 20, 2009 Opinion because they were issued by the Family Division. The Estate also asserts that the Family Division erred in awarding spousal support beyond one year of the filing of the inventory, arguing that this violated the plain language of 15 V.I.C. § 353. We address each argument in turn.

### A. The Appellate Division's Authority to Review the Family Division Orders

The Estate first challenges the Appellate Division's conclusion that it could not review the October 25, 2007 Order or the February 20, 2009 Opinion because the Estate consented to the February 17, 2010 Final Adjudication, and the opinion and order were signed by a fellow Superior Court judge rather than a Superior Court magistrate. Floretta essentially adopts the Appellate Division's reasoning as her own, and contends that because the Appellate Division could not review these decisions, this Court should dismiss the Estate's appeal. We apply plenary review to the Appellate Division's holding that it had no authority to review the Family Division orders because this is a question of law. *Martin v. Martin*, 58 V.I. 620, 624-25 (V.I. 2012) (citing *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007)).

We agree with the Estate that the Appellate Division erred in both respects. It is well established that "prior interlocutory orders merge with the final judgment in a case, and the interlocutory orders . . . may be reviewed on appeal from the final order." *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 706 (3d Cir. 1996). Pursuant to this principle, known as the "merger rule," this Court has repeatedly reviewed orders other than the actual final judgment — including where the final judgment represents a settlement between a plaintiff and one or more of the defendants. *See, e.g.*, *Santiago v. V.I. Housing Auth.*, 57 V.I. 256, 263 (V.I. 2012); *Molloy v. Independence Blue Cross*, 56 V.I. 155, 168 (V.I. 2012). As we explained in our prior opinion in this case, the final adjudication terminating administration of an estate constitutes the final judgment in a probate case, in that the final adjudication is what "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Estate of George*, 50 V.I. at 274 (quoting *Berke v. Bloch*, 242 F.3d 131,

134 (3d Cir. 2001)). And while the Estate, rather than consenting to the Final Adjudication, could have yet again objected to the spousal support payments, doing so — and thus further delaying the closing of the estate — was not necessary to preserve the issue for appeal. *See Chinnery v. People*, 55 V.I. 508, 514 (V.I. 2011) ("[o]nce a court has conclusively ruled on a matter, it is unnecessary for counsel to repeat his objection in order to preserve it for appeal" (quoting *United States v. Paul*, 542 F.3d 596, 599 (7th Cir. 2008))). Consequently, the fact that the Estate stipulated to the February 17, 2010 Final Adjudication and used that decision as a mechanism to appeal the earlier spousal support order is not troubling, but simply consistent with accepted appellate procedure.

■ Likewise, the Appellate Division is mistaken in its belief that "[t]here is . . . no statutory mechanism in the Virgin Islands Code that allows for a judge of the Superior Court of the Virgin Islands to review an appeal of another judge of the Superior Court of the Virgin Islands." (J.A. 293.) Recently, this Court clarified that "[t]he Virgin Islands Code does not simply provide that all appeals from decisions rendered by Superior Court magistrates are appealable to Superior Court judges; rather, it provides that '[a]ll appeals *from the Magistrate Division* . . . must be filed in the Superior Court." *Brown v. Brown*, 59 V.I. 583, 587 (V.I. 2013) (quoting 4 V.I.C. § 125 (emphasis in original)). Thus, when a Superior Court judge, by assignment or otherwise, exercises the jurisdiction of a magistrate, the appellate procedure remains unchanged, and the matter is heard by the Appellate Division. *Id.* at 587.

■ We recognize, of course, that the Appellate Division did not have the benefit of our *Brown* decision when it issued its July 27, 2012 Order. However, three months earlier, this Court, in considering a case that had been transferred from the Magistrate Division to the Criminal Division after trial but before sentencing, explained that in such a situation "the Superior Court judge simply replaced the magistrate as the trial judge at that time," and that the judge therefore could exercise plenary review over the matter and this Court — not the Appellate Division — would hear the appeal. *Azille v. People*, 59 V.I. 215, 221 (V.I. 2012). The same principle unquestionably applies when a case is transferred to the Magistrate Division from another division, with the magistrate simply replacing the judge and being permitted to reexamine the judge's prior interlocutory orders. *See, e.g., Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1252 (10th Cir. 2011) (stating that the "law of the case doctrine has no bearing on the

revisiting of interlocutory orders, even when a case has been reassigned from one judge to another"); *Perez-Ruiz v. Crespo-Guillen*, 25 F.3d 40, 42 (1st Cir. 1994) ("Interlocutory orders . . . remain open to trial court reconsideration, and do not constitute the law of the case."). Moreover, the position Floretta advocates could effectively deprive a litigant of the right to appellate review where a case is assigned to a division of the Superior Court that shares concurrent original jurisdiction with the Magistrate Division, and then is transferred to the Magistrate Division immediately prior to entry of final judgment. In such a circumstance, under Floretta's and the Appellate Division's reasoning, the matter could not then be appealed to the Appellate Division because this would require a Superior Court judge to review orders entered by another Superior Court judge; nor could the matter be appealed to this Court because — as an order entered by the Magistrate Division — it would not be a final appealable order under 4 V.I.C. § 32(a). *See H & H Avionics*, 52 V.I. at 462-63. Therefore, we hold the Appellate Division had the authority to review the October 25, 2007 Order and the February 20, 2009 Opinion.

## B. The Spousal Support Orders

Since this Court serves as a second level of appellate review in this case, we would, consistent with traditional appellate practices, ordinarily reverse the July 27, 2012 Order and remand the matter to the Appellate Division so that it may conduct a proper inquiry. But the Appellate Division, by concluding that the Estate's appeal was "without merit," (J.A. 294), in effect "adopted or affirmed" the October 25, 2007 Order and the February 20, 2009 Opinion, albeit in a highly cursory manner. *Gardiner v. Diaz*, 58 V.I. 199, 204 (V.I. 2013) (citing *Maso v. Morales*, 57 V.I. 627, 632 (V.I. 2012)). Consequently, to expedite the resolution of this fourteen-year probate matter, we exercise our discretion to review the underlying spousal support orders. *Id.* (holding that we "consider the underlying rulings made by the magistrate only to the extent that they were adopted or affirmed by the Appellate Division of the Superior Court").

We conclude that the Family Division — and, by endorsing its reasoning, the Appellate Division — erred in requiring the Estate to provide spousal support for more than one year. The statute which authorizes a court to order spousal support payments provides that

[i]f the property set apart as provided in section 352 of this title is insufficient for the support of the widow and minor children, according to their circumstances and condition in life, for one year after the filing of the inventory, the court may order that the executor or administrator pay to such widow, if any, and if not, then to the guardian of such minor children, an amount sufficient for that purpose.

15 V.I.C. § 353. Although the Estate argued that the phrase "for one year after the filing of the inventory" precluded any additional payments after the expiration of one year, the Family Division found this language ambiguous, and relied upon its reading of "the chapter as a whole" and policy considerations to interpret it. (J.A. 211.) Because this is an issue of statutory interpretation, we review this holding *de novo*. *Kelley v. Gov't of the V.I.*, 59 V.I. 742, 745 (V.I. 2013).

First, we emphasize the longstanding rule that "in construing a statute, if the intent of the Legislature is clear, that is the end of the matter." *In re Infant Sherman*, 49 V.I. 452, 456 (V.I. 2008) (citations, internal brackets and quotation marks omitted). Thus, courts will not use "legislative history" or other extrinsic materials "to contradict a clear statute's text." *Air Courier Conference of Am./Int'l Comm. v. U.S. Postal Serv.*, 959 F.2d 1213, 1223 (3d Cir. 1992). Given that section 353, by its own terms, limits spousal support payments to "one year after the filing of the inventory," we can find no basis to characterize the statute as ambiguous. *See Braffith v. People*, 26 F.2d 646, 648, 1 V.I. 582 (3d Cir. 1928) (applying Virgin Islands law, and explaining that a statute is only considered ambiguous where "because of doubtful language it would seem to have two meanings").

Nevertheless, even if we were to proceed as if the one-year limitations period is ambiguous, we disagree that a reading of chapter 21 of title 15 "as a whole" authorizes support payments of unlimited duration. The Legislature, in enacting chapter 21, clearly intended not to leave widows destitute during the administration of their spouses' estates. In section 351, it provides for the widow during the period before the inventory is complete: it permits her to remain in her homestead and retain possession of clothes and furniture, and further provides for a "reasonable provision" for her support and that of any minor children. 15 V.I.C. § 351. Once the inventory is filed, section 352 permits the court to set aside for the widow any property exempt from execution, which can

922

be used for her maintenance. 15 V.I.C. § 352. If the entire estate, however, is exempt from execution, the court can make it all available to the widow for her maintenance. 15 V.I.C. § 354. The widow may remain in the decedent's home "one year after his death" without paying rent, regardless of whether it is exempt from execution, and "shall have reasonable sustenance out of the estate for one year." 15 V.I.C. § 356. Finally, as noted above, section 353 permits spousal support payments "for one year after the filing of the inventory."

██ ██ But while the Family Division correctly recognized that the Legislature intended to provide for widows during the administration of the estate and, in some cases, even after the estate is closed, nonetheless there is nothing in chapter 21 which in any way supports a holding that the language "for one year after the inventory is filed" is meant as anything but a temporal limitation on a spouse's right to cash payments. The chapter was devised to ensure that the widow had some support before the inventory was filed, *see* 15 V.I.C. § 351, and could have access to exempted property after the inventory was filed, *see* 15 V.I.C. § 352. But the "one year" limitation is repeated in section 356, suggesting that its inclusion in section 353 was no mere accident, but perhaps instead a compromise between the competing interests of preserving the corpus of the estate for all of the heirs and ensuring immediate though limited protection for the widow. *See, e.g., Gov't of the V.I. v. Thomas*, 9 V.I. 17, 23 (V.I. Mun. Ct. 1971) ("It is proper to presume that a legislature knows the meaning of words, has used the words of a particular statute advisedly, and has expressed its intent by the[] words as found in th[e] statute."). It does not necessarily follow that just because the Legislature intended to provide some support for widows, it intended to do so indefinitely, or for so long as the administration lasts. Consequently, the Family Division's reliance on the purpose of the "chapter as a whole" is not persuasive.

██ The Family Division also suggested that the language "for one year after the inventory is filed" was intended to limit the time during which the court could *sua sponte* order spousal award payments, but that its power to do so *on motion* was not limited by the section. However, this interpretation does not have any basis in the language of the statute, which serves as our lodestar. There is no reference to "on motion" or "on its own motion," language which appears elsewhere in the Code when the Legislature intended to distinguish between the two mechanisms. *See, e.g.*, 5 V.I.C. § 860(c)(2) (permitting the court to grant various forms of

relief "on motion of the defendant or on its own motion"); 5 V.I.C. § 2531 (permitting the court to seal records "[o]n motion by a person who has been the subject of a complaint . . . or on the court's own motion"); 10 V.I.C. § 74 (permitting a court, reviewing a request for temporary relief against a civil rights respondent, to hear the case on the merits "[o]n motion of the complainant, the Commission, the respondent or on its own motion"). Section 353 contains none of this language, and provides a simple temporal limitation on the period during which the spouse may receive support payments. 15 V.I.C. § 353 (permitting the court to order support payments "for one year after the filing of the inventory"). Thus, the Family Division's interpretation would require the Court to read language into the statute, something we cannot do.[1] *See Brady v. Gov't of the V.I.*, 57 V.I. 433, 443-44 (V.I. 2012) (where a statute is unambiguous, "it is not the function of this Court to substitute its judgment for that of the Legislature"); *Thomas*, 9 V.I. at 24 ("It is not the province of the court to insert in a statute that which has been omitted."); *Dublin v. Young*, 75 Ohio St. 3d 472, 1996 Ohio 207, 663 N.E.2d 1270, 1272 (1996) (rejecting an interpretation that would require the court to add language to a regulation because it would impermissibly constitute "legislating by judicial fiat").

 In reaching our decision, we recognize that as a matter of policy, the Family Division may have been correct to find that only one year of spousal support is inadequate. That is particularly true in a case such as this, where Lawrence — for no reason clear from the record — delayed the closing of the Estate for a decade, leaving Floretta without her intestate distribution during that time. However, a court unquestionably lacks authority to disregard a statute duly enacted by the Legislature and instead apply the law it believes would be most fair to the parties. *See Simmonds v. People*, 59 V.I. 480, 491 n.7 (V.I. 2013) ("[a]s with all policy matters entrusted to the Legislature, this Court must defer to the Legislature's decision"); *Brady v. Cintron*, 55 V.I. 802, 821 (V.I. 2011) (noting that the language of the statute must control its interpretation whenever it is plain). To the extent a one-year limitations period on

---

[1] In its October 25, 2007 Order, the Family Division cited Superior Court Rule 196 as further authority to award spousal support payments. But Rule 196 is silent as to how long such payments may continue and — in any event — the court cannot use a court rule as a mechanism to create or alter a substantive right. *Todmann v. People*, 57 V.I. 540, 544 (V.I. 2012).

spousal support is unjust in light of the length of the probate process or otherwise represents bad policy, it is the duty of the Legislature to balance the need of surviving spouses with those of other surviving heirs and, if necessary, amend section 353. *See Simmonds*, 59 V.I. at 491 n.7; *State v. Heiskell*, 129 Wn.2d 113, 916 P.2d 366, 370 (1996) (noting that a court cannot read into a statute provisions which the legislature may have unintentionally left out); *see also McDonnell v. Oxler's Estate*, 235 S.W.2d 568, 570 (Mo. Ct. App. 1951) (noting that a widow's right to *pendente lite* support from the estate is a creature of statute and not common law); *cf.* 15 V.I.C. § 83 (eliminating the common law right to dower and curtesy in the Virgin Islands).

## IV. CONCLUSION

For the foregoing reasons, we reverse the Appellate Division's July 27, 2012 Order as well as the Family Division's October 25, 2007 Order and February 20, 2009 Opinion, vacate the Magistrate Division's February 17, 2010 Final Adjudication, and remand the case to the Magistrate Division so that it may issue a new adjudication in light of the fact that Floretta was only entitled to collect spousal support payments for one year from the filing of the inventory.